**UNITED STATES of America, Plaintiff,**

**v.**

**Richard S. CANNISTRARO and Richard O. Bertoli, Defendants.**

**Crim. A. No. 89–218.**

United States District Court, D. New Jersey.

Feb. 11, 1992.

See also 794 F.Supp. 1313.

John M. Fietkiewicz and David M. Rosenfield, Asst. U.S. Attys., Newark, N.J., for U.S.

Richard O. Bertoli, pro se.

Franklin M. Sachs, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, N.J., Stand-by counsel, for defendant Richard O. Bertoli.

Michael B. Pollack, New York City, for defendant Richard S. Cannistraro.

## OPINION

LECHNER, District Judge.

This is a criminal action which originated on 16 June 1989 when an indictment (the "Indictment") was returned. Defendants Richard O. Bertoli ("Bertoli"), Leo M. Eisenberg ("Eisenberg") and Richard S. Cannistraro ("Cannistraro") (collectively the "Defendants") were named in the Indictment.[1] On 29 September 1989 a six count superseding indictment (the "Superseding Indictment")[2] was returned against the Defendants.[3] On 21 January 1992 the Gov-

---

[1] On 16 June 1989 the Indictment was sealed by order of United States Magistrate Judge Stanley R. Chesler.

[2] On 29 September 1989 the Superseding Indictment was sealed by Magistrate Judge Chesler and was unsealed on 5 October 1989.

[3] The nature of the counts in the Superseding Indictment and the facts underlying it are set forth in the various opinions preceding this one. See e.g., United States v. Eisenberg, 773 F.Supp. 662, 672–80 (D.N.J.1991).

ernment returned an eight count second superseding indictment (the "Second Superseding Indictment") against Bertoli and Cannistraro. Count One of the Second Superseding Indictment charges Bertoli and Cannistraro with racketeering activities in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count Two charges Bertoli and Cannistraro with conspiracy to commit racketeering in violation of RICO. Count Three charges Bertoli and Cannistraro with conspiracy to obstruct justice. Counts Four through Seven charge Bertoli with obstruction of justice in violation of 18 U.S.C. § 1503. Count Eight charges Bertoli and Cannistraro with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371.[4] Eisenberg is not a defendant in the Second Superseding Indictment although he is listed as a co-conspirator.[5]

Currently before the court is the motion of Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello ("Podvey Sachs"), acting as standby counsel to Bertoli, to withdraw as standby counsel (the "Motion to Withdraw") and to be reimbursed for attorney's fees and costs (the "Motion for Reimbursement") associated with depositions held in the Cayman Islands (the "Cayman Island Depositions") from 3 September 1991 through 18 September 1991.[6]

For the reasons set forth below, the offer of Podvey Sachs, described below, to voluntarily serve as standby counsel is accepted; accordingly, the Motion to Withdraw is moot. The Motion for Reimbursement is denied.

### FACTS

This criminal matter has been the subject of numerous pretrial motions, all of which Podvey Sachs has been involved in either as counsel of record or as standby counsel of Bertoli. The attorneys from Podvey Sachs who have been involved in this matter include: Franklin Sachs, Esq. ("Sachs"), a partner; Curtis H. Meanor, Esq. ("Meanor"),[7] a partner; Richard A. Chattman, Esq. ("Chattman"), a partner; and Marianne C. Tolomeo, Esq. ("Tolomeo"), an associate. Although the parties are familiar with the litigation of this matter, a brief overview of the procedural history of this case is appropriate.

On 2 November 1989 Sachs, on behalf of Bertoli, filed a motion for recusal. Notice of Motion, filed 2 November 1989. Sachs submitted an affidavit in support of this motion. On 6 November 1989 at the arraignment of Bertoli, Sachs, on behalf of Bertoli, appeared as the attorney of record. That same day, the Government moved for an order granting it leave to take foreign depositions in the Cayman Islands pursuant to Letters Rogatory. On 17 November 1989, Sachs, on behalf of Bertoli, submitted opposition to this motion. Bertoli objected on the ground that the Government had not shown the depositions would be relevant or that the witnesses would be unavailable for trial. Bertoli's Opposition to Government's

---

**4.** Previously, Bertoli moved to dismiss Counts One, Two and Three of the Superseding Indictment which are substantially the same as Counts One, Two and Three of the Second Superseding Indictment. Bertoli also made several pretrial omnibus discovery motions, all of which were discussed in *Eisenberg, supra.*

**5.** Eisenberg entered a plea to count one of the Superseding Indictment on 23 January 1992.

**6.** In support of the motions Podvey Sachs has submitted: Memorandum in Support of Motion for Attorney's Fees and Expenses Incurred in Acting as Standby Counsel for Defendant Bertoli during the Cayman Island Proceeding and to be Relieved as Counsel (the "Moving Brief"); Certification of Marianne C. Tolomeo (the "Tolomeo Certif."); Transcript of 3 September 1991

Hearing (the "3 September 1991 Hearing"); Letter Brief in Reply to the Government's opposition (the "Reply Brief"); Tolomeo Certificate (the "Supp. Tolomeo Certif."). After oral argument, Podvey Sachs submitted a letter to the court, dated 30 January 1992 (the "30 January 1992 Letter").

In opposition to the Motion, the Government submitted: Letter brief in response to the Motion to Withdraw (the "Opp. Brief").

Some arguments were advanced with respect to the Motion to Withdraw at the scheduling conference held on 15 November 1991 (the "15 November 1991 Tr."). Oral argument was held on 27 January 1992 (the "27 January 1992 Tr.").

**7.** Prior to becoming a partner at Podvey Sachs, Meanor was a federal judge in this District.

Motion to Take Foreign Depositions, filed 17 November 1989.

On 14 December 1989 Sachs, on behalf of Bertoli, filed a motion for discovery together with the supporting affidavit of Sachs. This motion was denied. *See* letter-opinion and order, filed 11 January 1990. On 12 January 1990 Sachs, on behalf of Bertoli, filed a notice of motion on short notice for an order to strike submissions in the Government's opposition to the motion for recusal. Sachs submitted an affidavit in support of this motion. On that same day, Sachs submitted an affidavit in further opposition to the Government's request for international assistance.

On 29 January 1990 Sachs, on behalf of Bertoli, appeared for a hearing on the motion to strike a portion of the Government's opposition to the recusal motion and the motion to reassign the recusal motion. *See* Minutes of Proceedings, dated 29 January 1990. The motion to reassign the recusal motion was denied and a decision on the motion for recusal was reserved. *Id.* Subsequently, the motion for recusal was denied. *See United States v. Eisenberg,* 734 F.Supp. 1137 (D.N.J.1990). On 3 April 1990 Sachs, on behalf of Bertoli, filed a motion for reconsideration of the denial of the motion for recusal. Sachs submitted an affidavit in support of the motion for reconsideration. Affidavit of Sachs, dated 2 April 1990. The motion for reconsideration was denied. *See United States v. Eisenberg,* 734 F.Supp. 1168 (D.N.J.1990).

Meanwhile, on 4 April 1990 the Government made a treaty request (the "Treaty Request") to the Central Authority of the Cayman Islands (the "Cayman Central Authority") pursuant to a Treaty between the United States and the United Kingdom of Great Britain and Northern Ireland concerning the Cayman Islands Relating to Mutual Legal Assistance in Criminal Matters (the "Treaty"), S. Treaty Doc. No. 100–8, 100th Cong., 1st Sess. (1990). Letter to court from Government, dated 4· April 1990, Ex. C (the "4 April 1990 Letter"). The Treaty Request sought the right to obtain testimony and evidence located in

the Cayman Islands relevant to the prosecution of the Superseding Indictment.

Contemporaneously with the filing of the Treaty Request, the Government filed a motion pursuant to Fed.R.Crim.P. 15 for leave to take depositions in the Cayman Islands (the "Rule 15 Motion"). In addition, the Government filed a motion for a continuance pursuant to the Speedy Trial Act. On 24 April 1990, Sachs, on behalf of Bertoli, entered into a consent order (the "24 April 1990 Consent Order") which was filed on that date and which granted the Rule 15 Motion permitting the Government to take the Cayman Islands Depositions.

On 1 May 1990 Sachs, on behalf of Bertoli, filed a petition for a writ of mandamus seeking an order of recusal. The Third Circuit denied the petition for a writ of mandamus. Order, dated 14 May 1990. This denial was effected before the Government filed any opposition. On 6 May 1990 the Government's motion for a continuance under the Speedy Trial Act was granted. Order, filed 6 May 1990; corrected order, filed 27 June 1990; letter-opinion, filed 29 June 1990.

Defendants commenced a civil action in the Grand Court of the Cayman Islands (the "Cayman Grand Court") seeking to enjoin the Government from pursuing the Treaty Request. On 10 July 1990 the Cayman Grand Court filed an order dismissing Defendants' action. Subsequently, Defendants, the Government and the Attorney General for the Cayman Islands consented to a stay of that order pending an appeal by Defendants to the Cayman Islands Court of Appeals (the "Cayman Court of Appeals"). 20 August Opinion, 4.

On 30 July 1990, Sachs, on behalf of Bertoli, submitted a letter in which Bertoli joined with Cannistraro's motion, filed 23 July 1990, for recusal. This motion for recusal was denied. Letter-opinion and order, filed 16 August 1990.

On 27 September 1990 Tolomeo, on behalf of Bertoli, filed a motion on short notice to modify the conditions of Bertoli's bail. On 29 September 1990, Tolomeo amended this motion. On 5 October 1991, Tolomeo appeared at the hearing on wheth-

er to relax Bertoli's travel restrictions. *See* Minutes of proceedings, filed 5 October 1990. On 23 October 1990 Sachs and Chattman appeared as counsel for Bertoli at the hearing on the motion for bail modification. *See* Minutes of proceedings, filed 23 October 1990. On 24 October 1990 Sachs attended a status conference on this matter. *See* Minutes of proceedings, filed 24 October 1990. On 26 October 1990 Sachs and Bertoli signed a stipulated order regarding Bertoli's passport. Stipulated Order, filed 29 October 1990.

In November 1990 the Government requested several changes to the scheduling order entered 23 May 1990 (the "23 May 1990 Scheduling Order"). Sachs, on behalf of Bertoli, responded to the Government's request by letter, dated 13 November 1990. Subsequently, Sachs submitted an affidavit in opposition to the Government's motion for modifications to the 23 May 1990 Scheduling Order. On 14 December 1990 Sachs, on behalf of Bertoli, consented to the Government's proposed changes to the 23 May 1990 Scheduling Order on the condition that the 4 April deadline for the Cayman Islands discovery would not be affected. Letter to court from Sachs, dated 14 December 1991.

Meanwhile, on 28 November 1990 the Cayman Court of Appeals affirmed the order of the Cayman Grand Court dismissing Defendants' action. Subsequently, Defendants sought leave to appeal the Cayman Court of Appeal's affirmance to the Privy Council for the United Kingdom (the "Privy Council"). On 5 December 1990, the Cayman Court of Appeals granted Defendants leave to appeal and stayed the processing of the Treaty Request pending the appeal to the Privy Council. *Id.*

On 7 January 1991 Tolomeo appeared at a scheduling conference. *See* Minutes of proceedings, filed 7 January 1991. On 23 January 1991 Tolomeo signed a consent order which altered Bertoli's conditions of bail. Consent Order, filed 23 January 1991.

On 13 March 1991 Sachs, on behalf of Bertoli, filed a motion to dismiss portions of the Superseding Indictment, a motion relating to discovery and evidentiary matters and a motion for a bill of particulars (the "Omnibus Motion"). Affidavits in support of the Omnibus Motion were submitted by Chattman and Tolomeo.

On 22 April 1991 the Privy Council affirmed the order of the Cayman Court of Appeals. Accordingly, the Cayman Central Authority scheduled document production in the Cayman Islands for the period from 13 May through 21 May 1991, with the Cayman Islands Depositions to commence thereafter. Subsequently, the Government and the Defendants agreed that document production would be postponed until 15 July 1991 and the Cayman Islands Depositions would be postponed until 4 September 1991. *Id.*, 4–5. On 8 May 1991 Chattman signed a consent order modifying the conditions of Bertoli's bail which permitted him to travel to the Cayman Islands to be present during document production. On 17 June 1991 the Government filed a motion for Speedy Trial Act continuance.

On 20 June 1991 Sachs, on behalf of Bertoli, requested a hearing at the earliest possible date for the Omnibus Motion. Letter to court, dated 20 June 1991. On 21 June 1991 oral argument was scheduled for 3 July 1991 (the "3 July 1991 Hearing"). Letter from court, dated 21 June 1991; letter from court, dated 25 June 1991. On 24 June 1991, Sachs withdrew his request for oral argument. Letter to court, dated 24 June 1991. The parties were informed, however, that oral argument would be heard on 3 July 1992 with respect to the Speedy Trial Act issues raised in the letter from Podvey Sachs, dated 24 June 1991. Letter from court, dated 25 June 1991.

On 26 June 1991, Sachs stated he would not attend the 3 July 1991 Hearing because he chose to attend a meeting for a civil matter in Massachusetts. Letter to court, dated 26 June 1991. Subsequently, Meanor requested rescheduling of the 3 July 1991 Hearing. Meanor letter, dated 28 June 1991. In addition, Meanor requested that Podvey Sachs be apprised, prior to the 3 July 1991 Hearing of any inquiries the court had because Sachs would not be present. *Id.*

On 1 July 1991 Sachs was ordered to appear at the 3 July 1991 Hearing and the requests to reschedule or to allow Chattman or Meanor to appear at the 3 July 1991 Hearing were denied. Order, filed 2 July 1991; Letter-opinion, filed 2 July 1991. Subsequently, a motion to the Court of Appeals was made by Podvey Sachs to stay an order of this court requiring Sachs to appear for a hearing on 3 July 1991. A writ of mandamus was also filed by Podvey Sachs with the Court of Appeals seeking the same relief. On 2 July 1991, the Third Circuit denied the motion to stay the hearing but directed that Chattman, who was familiar with the case, could appear instead of Sachs at the hearing.[8] Order of the United States Court of Appeals for the Third Circuit, 2 July 1991 (the "2 July 1991 Third Circuit Order").

On 3 July 1991 Tolomeo, on behalf of Bertoli, filed a motion for discovery of impeachment material of witnesses scheduled for deposition in the Cayman Island under *Giglio v. United States*, 405 U.S. 150, 150, 92 S.Ct. 763, 764, 31 L.Ed.2d 104 (1972). On that same day, Tolomeo submitted opposition to the Government's motion for a Speedy Trial Act continuance. On 19 July 1991 Tolomeo submitted opposition to the Government's amended motion for a Speedy Trial Act continuance.

On 26 July 1991 the Omnibus Motion was denied except for the reservation of a portion of the motion for dismissal because of prosecutorial misconduct. *Eisenberg*, 773 F.Supp. 662. On 31 July 1991 the Government's motion for a Speedy Trial Act continuance was granted. Order, filed 31 July 1991 (the "31 July 1991 Order"). The 31 July 1991 Order ordered that the period beginning 31 July 1991 through the date of the pretrial conference to be scheduled after the completion of the Cayman Islands proceedings was excluded for purposes of the Speedy Trial Act. *Id.*, 7.

On 12 August 1991, Tolomeo, on behalf of Bertoli, submitted a reply brief and affidavit of Tolomeo in support of the motion for disclosure of *Giglio* material. This motion was denied. Letter-opinion and order, filed 20 August 1991.

On 26 August 1991, Tolomeo stated Podvey Sachs did "not intend to have anyone from [Podvey Sachs] present during the Cayman Island depositions.... Our client, defendant Bertoli, wishes to represent himself during such proceedings." Letter to court, dated 26 August 1991. On 28 August 1991, just four business days before the commencement of depositions in the Cayman Islands which had been scheduled for three months following prolonged litigation in the English courts, Podvey Sachs, on behalf of Bertoli, filed a notice of motion on short notice for an order "permitting Bertoli to represent himself pro se only for purposes of the Fed.R.Crim.P. 15 depositions in the Cayman Islands...." Notice of Motion on Short Notice, received 28 August 1991. In addition, Podvey Sachs requested to withdraw as counsel to Bertoli. *Id.;* Tolomeo's letter to court, dated 28 August 1991.

---

**8.** The 2 July 1991 Third Circuit Order provided in pertinent part:

It was represented by counsel for Bertoli that one H. Richard Chattman, a partner of Franklin Sachs, was knowledgeable about the case and the proceeding, and was available to appear on July 3, 1991. Significantly, a check of the district court's docket reveals that the appearance filed on behalf of the defendant, Bertoli, was in the name of Franklin Sachs, but it was represented to me that at all times papers in the proceedings have been filed by the predecessor to the present firm of Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello and that different attorneys of that firm have appeared in connection with various motions.

While a district court's order directing the appearance of a particular member of the bar should not lightly be overturned, in light of the availability of a partner of Sachs who can represent Bertoli at the July 3, 1991 hearing, the lack of prejudice claimed by the government, and the lack of Speedy Trial Concerns, as well as the appearance filed by the Podvey firm and the fact that the government does not object to, and indeed takes no position, even if it could, on Chattman's appearance, it is therefore ... [ordered] that the motion to stay the personal appearance of Franklin M. Sachs be ... granted ... [and] the hearing set for July 3, 1991, ... may proceed with the firm of Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello....

2 July 1991 Third Circuit Order, 2–3.

On 3 September 1991 a hearing (the "3 September 1991 Hearing") was held on Bertoli's application to proceed pro se.[9] At the 3 September Hearing, against strong advice of the court to the contrary, Bertoli waived his Constitutional right to be represented by counsel in this matter. 3 September 1991 Hearing Tr., 11–47. With respect the representation by Sachs, Chattman and Tolomeo, Bertoli stated he was satisfied with their performance. *Id.*, 27. Bertoli acknowledged that standby counsel could be appointed, but stated he did not want to have standby counsel. *Id.*, 28.

Bertoli was granted the right to proceed pro se; however, Podvey Sachs was appointed as standby counsel. *Id.*, 47. Podvey Sachs then moved for an order to be relieved as counsel. 3 Sept. Hearing, 48–49. Podvey Sachs was relieved from representing Bertoli, "but not of the obligation to be standby counsel.... [Podvey Sachs] ha[s] taken the case and it is [Podvey Sachs'] obligation to continue the case." *Id.*, 49.

Bertoli's election to proceed pro se was memorialized in an order, filed 4 September 1991 (the "4 September 1991 Order"). In addition, the 4 September 1991 Order directed Podvey Sachs to act as standby counsel for Bertoli during the Cayman Islands Depositions scheduled to begin 4 September 1991. 4 September 1991 Order, 2. A request by Podvey Sachs for fees and expenses for acting as standby counsel in the Cayman Islands Depositions was denied. *Id.;* 3 September Hearing, 48–49.

The Cayman Islands Depositions commenced on 4 September 1991 and concluded on 17 September 1991. Tolomeo attended the Cayman Islands Depositions as standby counsel to Bertoli. According to Tolomeo, she, at the request of Bertoli, did not actively participate in the Cayman Islands Depositions. Tolomeo Cert., ¶ 4. Podvey Sachs, however, contends it generated $10,-350.00 in attorney's fees at the Cayman Islands Depositions. Podvey Sachs contends an additional $2,673.94 was incurred for expenses associated with the Cayman Islands Depositions. *Id.*, ¶ 7. Bertoli has not paid Podvey Sachs for these fees or expenses. *Id.*, ¶ 8.

On 27 January 1992, at oral argument for the Motion to Withdraw, Meanor, on behalf of Podvey Sachs, made the following offer:

> ... We are willing, on an entirely voluntary basis and without waiving any of our arguments that we cannot be compelled to do so, to provide sufficient standby counsel service as a courtesy to this Court, to Mr. Bertoli, if and when he desires the need for such service.

> . . . . .

> At the request of the Court, we will also agree that an attorney will be available to make brief court appearances, should the Court be of the opinion during the trial that the presence of counsel is essential.

> ... I'm confident that if we can work this out this way, the offer we have made will not be abused.

27 January 1992 Oral Arg. Tr., 19–20. After hearing Meanor's offer, Bertoli stated he "certainly would not abuse it if the Court decided to go along with their offer." *Id.*, 21.

The parameters of the offer were discussed extensively. Of particular concern was the issue of "abuse" of the offer. The problem raised was that at some point, Bertoli may feel constrained to limit his use of Podvey Sachs' services or expertise because he may feel he had worn out his welcome at Podvey Sachs. *Id.*, 23–24. At the conclusion of the discussion, Meanor assured the court that an attorney would be present if an attorney's presence was deemed required. Meanor stated:

> If you feel counsel's presence is physically required, we will respond. If you ask us to, we'll respond. Who responds, I think, will depend on who's available and to the level of expertise needed to

---

**9.** Because the Government objected to Bertoli's initial request to proceed pro se only at the Cayman Islands depositions, Bertoli elected to proceed pro se for the remainder of the entire case. 3 September 1991 Hearing Tr., 4.

handle a particular problem at hand. It may be very simple or complex.

. . . . .

If you request, we'll respond and it will be up to us to determine what the problem is.

*Id.*, 27.

## DISCUSSION

### A. *Motion to Withdraw*

Podvey Sachs moves to be relieved as standby counsel on the ground that it cannot be forced to serve as counsel if Bertoli does not desire its assistance. Moving Brief, 4–5. Podvey Sachs also argues the court's insistence that a particular attorney at Podvey Sachs act as standby counsel constitutes an abuse of the court's discretion.[10] Reply Brief, 19; 15 November 1991 Tr., 30, 32–34. Lastly, Podvey Sachs argues it cannot be required to serve as standby counsel because it was not retained to serve as counsel for the Second Superseding Indictment. 30 January 1992 Letter.[11]

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) the Supreme Court stated that a trial court may appoint standby counsel to assist a pro se defendant in his defense. 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. The Court further explained, in *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122, *reh'g denied*, 465 U.S. 1112, 104 S.Ct. 1620, 80 L.Ed.2d 148 (1984), that while a defendant has a right to proceed pro se "a defendant's sixth amendment rights are not violated when a trial judge appoints standby counsel even over the defendant's objection." 465 U.S. at 184, 104 S.Ct. at 954; *see also, Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir.1986). Although courts are prohibited from ordering a defendant to be represented by counsel, *Faretta*, 422 U.S. at 833, 95 S.Ct. at 2540, "it does not foreclose trial courts from using less overbearing means of ensuring that pro se defen-

dants have adequate legal representation." *Johnstone*, 808 F.2d at 216.

The purpose of standby counsel is to assist the pro se defendant in matters with which he may not be familiar and to insure a fair and efficient trial. *McKaskle*, 465 U.S. at 184, 104 S.Ct. at 954; *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. at 2540 n. 46; *United States v. Campbell*, 874 F.2d 838, 849 (1st Cir.1989).

The Third Circuit has declared appointing standby counsel is "the prudent course to take when a defendant elects to proceed pro se." *United States v. Welty*, 674 F.2d 185, 193 n. 5 (3d Cir.1982). Section 6–3.7 of the ABA Standards of Criminal Justice provides in pertinent part: "Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants." Section 6–3.7. Standby counsel should also be appointed so the defendant's case may move forward without undue delay. *United States v. Romano*, 849 F.2d 812, 820 n. 8 (3d Cir.1988).

In *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court upheld the right of every criminal defendant to be represented by counsel and further expressed that it was the court's responsibility to insure this right. *Id.*, at 68–72, 53 S.Ct. at 64–65. Moreover, the Supreme Court held: "Attorneys are officers of the court and are bound to render service when required by such an appointment." *Id.*, at 73, 53 S.Ct. at 65.

The Third Circuit explained in *United States v. Accetturo*, 842 F.2d 1408, 1413 (3d Cir.1988), the right to assign counsel extends to non-indigent defendants. In *Accetturo*, defendant's counsel became ill fourteen months into the trial and the court ordered an attorney previously involved in the case and originally the attorney of record to represent the non-indigent defendant. The Third Circuit in *Accetturo* stated the "right to assignment of counsel is

**10.** Podvey Sachs raised this issue for the first time at oral argument and again in its Reply Brief.

**11.** In light of the fact that the Second Superseding Indictment contains many of the same counts contained in the Superseding Indictment and the complexity of the charges has not increased, this argument is without merit.

not limited to those financially unable to obtain counsel." *Accetturo,* 842 F.2d at 1412 (quoting Fed.R.Crim.Proc., Rule 44, Advisory Committee Note 1966).[12]

The *Accetturo* court further defined the relationship between the District Court and attorneys who appear before it,

> There is a symbiotic relationship between the court and the attorneys who are members of its bar. The court's responsibility for the administration of justice would be frustrated were it unable to enlist or require the services of those who have, by virtue of their license, a monopoly on the provision of such services. Attorneys who have the privilege of practicing before the court have a correlative obligation to be available to serve the court.

842 F.2d at 1413.

■ Importantly, in a criminal case, an attorney who enters a case as the attorney of record remains the attorney until relieved by court order. Rule 18, Rules of the United States District Court for the District of New Jersey (the "Local Rules"). Rule 18 provides:

> Unless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court. After a case has been first set for trial, substitution and withdrawal shall not be permitted except by leave of court.

Local Rule 18. A district court will grant leave when it is satisfied that the substituted counsel is familiar with the case and will not unduly delay the trial. Comment to Local Rule 18; *see also, Accetturo,* 842 F.2d at 1414, *Campbell,* 874 F.2d at 847, *United States v. Rodriguez–Baquero,* 660 F.Supp. 259, 261 (D.Me.1987).

In this case, Podvey Sachs has represented Bertoli as counsel since 6 November 1989 and is intimately familiar with the complex legal issues involved. Podvey

Sachs performed a significant amount of work for Bertoli prior to his request to go pro se and was compensated by Bertoli. Importantly, Podvey Sachs is qualified to serve as standby counsel or to step in as counsel, if the need arises.

Although Bertoli made it clear at the 3 September 1991 Hearing he did not wish to have standby counsel, he also indicated he had no problems with Podvey Sachs. Indeed, Bertoli states he was satisfied with their representation. 3 September Hearing, 27.

This case has been classified as a complex case and the trial is projected to be lengthy; accordingly, standby counsel is essential. If Bertoli changes his mind or is unable to continue pro se, access to independent counsel will be crucial to ensure Bertoli's sixth amendment right to a fair trial, as well as an efficient trial. *See McKaskle,* 465 U.S. at 184, 104 S.Ct. at 954; *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2540 n. 46; *Campbell,* 874 F.2d at 838.

■ Podvey Sachs contends leave of court is not required where other counsel has been substituted. Reply Brief, 5. It argues substitution of counsel has in effect been made by allowing Bertoli to represent himself pro se. *Id.* Podvey Sachs also contends that only when a case is set for trial or imminently near trial is leave necessary from the court. *Id.,* 5–6. Podvey Sachs relies on cases where counsel was not given leave by the court to withdraw because trial was imminent. *Id.* (citing *United States v. Vastola,* 899 F.2d 211, 236 (3d Cir.1990); *Accetturo,* 842 F.2d at 1414; *Campbell,* 874 F.2d at 847; *Rodriguez–Baquero,* 660 F.Supp. at 269). Podvey Sachs' argument is without merit.

■ Counsel has not been substituted for Bertoli. Bertoli has chosen, against strong advice to the contrary, to proceed

---

**12.** The Advisory Committee Notes to Rule 44 provide:

> This subdivision expresses the right of the defendant to obtain counsel to have such counsel assigned at any stage of the proceedings from his initial appearance before the commissioner or court through the appeal, unless he waives such right.... The right to

> assignment of counsel is not limited to those financially unable to obtain counsel. If a defendant is able to compensate counsel but still cannot obtain counsel, he is entitled to the assignment of counsel even though not to free counsel.

Rule 44(a), 1966 Advisory Committee Notes.

pro se. 3 September 1991 Hearing Tr., 25, 31, 40, 46. Because of the complexity of this case and the pre-trial motions and discovery in progress, standby counsel is crucial at this point in the litigation and will continue to be crucial throughout the trial. Podvey Sachs, because of its long-standing involvement in the case since 1989, will continue to act as standby counsel.

Significantly, the litigation is very much in progress at the present time and has been since 1989, despite the absence of a trial date which has been delayed in no small part by the endless motions and collateral litigation brought by Bertoli. In point of fact, at the 27 January 1992 hearing, the parties were informed a target date for the commencement of trial is the first week of May 1992. Trial is imminent.

Pre-trial motions and discovery continue. The pre-trial motions and foreign depositions will shape much of the substantive and procedural issues at trial. The presence of standby counsel during these proceedings will assure Bertoli's sixth amendment rights and hopefully avoid further delay. *See, e.g., Campbell,* 874 F.2d at 848; *Accetturo,* 842 F.2d at 1414; *Rodriguez–Baquero,* 660 F.Supp. at 261.

Podvey Sachs argues substitution of other counsel to serve as standby counsel will not cause delay because the trial is already being delayed in light of the ongoing Cayman Islands Depositions, pending pretrial motions and pretrial motions yet to be filed. This argument, however, is inconsistent. Because of the complexity of the case, the need for foreign discovery and the numerous motions already under consideration or about to be filed, the need for the continuity of Podvey Sachs as standby counsel is obvious.

■ Podvey Sachs, moreover, has an obligation to continue in this case. Rule 1.16(c) of the ABA Rules of Professional Conduct states:

> when ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

Rule 1.16(c). Both the ABA Rule 1.16(c) and Local Rule 18 leave withdrawal of counsel to the discretion of the court.

■ Although it would be appropriate to require Podvey Sachs to remain as standby counsel to protect the due process rights of Bertoli, such an order is not necessary at this time in light of the offer advanced by Podvey Sachs at oral argument. At oral argument Meanor stated:

> ... We are willing, on an entirely voluntary basis and without waiving any of our arguments that we cannot be compelled to do so, to provide sufficient standby counsel service as a courtesy to this Court, to Mr. Bertoli, if and when he desires the need for such service.

> . . . . .

> At the request of the Court, we will also agree that an attorney will be available to make brief court appearances, should the Court be of the opinion during the trial that the presence of counsel is essential.

> ... I'm confident that if we can work this out this way, the offer we have made will not be abused.

27 January 1992 Oral Arg. Tr., 19–20. Following Podvey Sachs' offer, Bertoli stated he "certainly would not abuse it if the Court decided to go along with their offer." *Id.,* 21.

After an extensive discussion was conducted on the parameters of the offer and whether Bertoli would feel constrained to use Podvey Sachs' services or expertise, Meanor assured the court that if the court deemed the presence of an attorney necessary at trial, an attorney would be present. Indeed, Meanor stated:

> If you feel counsel's presence is physically required, we will respond. If you ask us to, we'll respond. Who responds, I think, will depend on who's available and to the level of expertise needed to handle a particular problem at hand. It may be very simple or complex.

> . . . . .

If you request, we'll respond and it will be up to us to determine what the problem is.

*Id.,* 27.

In light of the complexity of this matter and the need to assure Bertoli a fair trial, counsel's presence will be necessary at pretrial motions and at trial, from the selection of a jury through the return of a verdict. The assurance of Meanor, that a competent attorney will be present as necessitated by the court is relied on and accepted. Accordingly, the Motion to Withdraw is moot.[13]

■ In the event that prior to or during trial Bertoli seeks representation by counsel or becomes unable to continue pro se, Podvey Sachs, specifically Sachs or Chattman, will be required to serve as trial counsel for Bertoli.[14] Podvey Sachs argues because the firm, not individual attorneys from its firm, represents Bertoli, specific attorneys cannot be required to appear at trial. Reply Brief, 19–20. It argues there is no reason to require either Sachs or Chattman to appear as trial counsel because they do not have special knowledge of this case. *Id.,* 20–21.

As previously stated, Podvey Sachs, specifically Sachs, and later Chattman, voluntarily took on the representation of Bertoli. Indeed, prior to the events surrounding the 3 July 1991 Hearing and 3 July 1991 Third Circuit Order, Sachs argued and engaged in all substantive matters on behalf of Bertoli. Indeed, when Podvey Sachs appealed the issue of whether Sachs must appear at the 3 July 1991 Hearing, it only suggested that either Meanor or Chattman appear at that hearing. No suggestion was made that Tolomeo was qualified or had the suf-

ficient experience to appear at the 3 July 1991 Hearing.

Moreover, by Tolomeo's own submission, Sachs and Chattman have played a crucial role in the strategic decisions of this case. Supp. Tolomeo Certif., 1. Prior to the 3 July 1991 Third Circuit Order, the only matters Tolomeo argued or presented on behalf Bertoli were related to discovery, bail or scheduling.[15] It was not until after the 3 July 1991 Third Circuit Order, that Tolomeo began to file all submissions and make regular appearances on behalf of Bertoli. Accordingly, Podvey Sachs' argument that Sachs and Chattman are neither intimately familiar with nor extensively involved with the proceedings and facts of this case is unwarranted.

■ Significantly, a court has inherent power to appoint counsel when necessary both before and during trial. *Accetturo,* 842 F.2d at 1413. Importantly, the model rules of professional responsibility mandate "competent representation," which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Model Rules of Professional Conduct Rule 1.1 & comment.

In the instant case, in addition to the experience of Sachs and Chattman as trial attorneys as well as the resources of Podvey Sachs, these attorneys have intimate familiarity with the facts and strategy which have surrounded the litigation to date. Podvey Sachs, in effect, recognized this when Meanor agreed to respond to any request of the court. *See* 27 January 1991 Oral Arg. Tr., 27. The trial representation which would be provided by Sachs and Chattman would clearly satisfy the Model Rule of Professional Conduct mandate. In-

---

**13.** For the reasons set forth above, however, if Podvey Sachs had not voluntarily offered their services at the 27 January 1992 Hearing, the Motion to Withdraw would be denied.

**14.** At oral argument and the arraignment of the Second Superseding Indictment on 27 January 1992, Bertoli indicated he has sought the advice of other counsel and may seek the representation of counsel. Bertoli requested an adjournment on the issue for one week to determine if he desired to continue as a pro se defendant.

As of the date of this opinion, Bertoli has not asked to revoke his election to proceed pro se. If Bertoli changes his mind and later wants counsel, counsel chosen must be able, from a professional and rescheduling point of view, to readily familiarize him or herself with the contours of this case in time to proceed to trial.

**15.** Tolomeo participation in the drafting of the briefs submitted throughout the entire litigation is conceded.

deed, no other counsel could meet this mandate without extensive delays beyond those already experienced in this litigation. A trial attorney who has not participated in the extensive pretrial proceedings up to date would not be an adequate substitute for Sachs or Chattman because he or she would not have had the same exposure to the dynamics and extensive pretrial proceedings of this case.

Because Podvey Sachs appeared this case from the outset, counsel from the firm is the likely first choice to represent Bertoli in the event he elects to proceed with representation. In *Accetturo*, an attorney was ordered to serve as trial counsel after having made a limited appearance in the trial as local counsel. 842 F.2d at 1414. In this case, Podvey Sachs made no such limited appearance, but rather voluntarily entered a relationship with Bertoli to represent him.

For the reasons previously discussed, Sachs and Chattman are the attorneys from Podvey Sachs with the requisite knowledge and familiarity with the case to serve as trial counsel, if necessary. No other attorney from Podvey Sachs could readily begin representation of this case at any point at which Bertoli may change his mind or becomes unable to continue pro se. Bertoli has not objected to the representation provided by Sachs and Chattman. Indeed, when Bertoli elected to proceed pro se, he stated on the record that he was satisfied with Sachs' and Chattman's performance. 3 September 1991 Hearing Tr., 27.

In light of the voluntary decision of Sachs and Chattman to represent Bertoli in this matter, their extensive involvement in this matter, especially with respect to strategic decisions, as well as their experience as trial attorneys, in the event Bertoli seeks representation of counsel the presence of one of them at trial is crucial. Accordingly, Sachs or Chattman will be required to serve as trial counsel if Bertoli

revokes his election to proceed pro se or becomes unable to proceed pro se.

### B. *Motion for Reimbursement*

Podvey Sachs seeks reimbursement from the United States for attorneys' fees incurred while acting as standby counsel to Bertoli at the Cayman Islands Depositions. Although Podvey Sachs does not identify a specific agency or department of the United States from which compensation should originate, it appears from language in its submissions that the reference to the United States means the court. Moving Brief, 4; Reply Brief, 1–2. In addition, Podvey Sachs moves for reimbursement from the Government for its expenses and costs, pursuant to Rule 15(c) of the Federal Rules of Criminal Procedure, incurred at the Cayman Island Depositions. Moving Brief, 6–7; Reply Brief, 3–4.

#### 1. *Attorneys' Fees*

■ Podvey Sachs argues that a law firm should not be forced to represent a defendant as standby counsel without compensation. Moving Brief, 4. Podvey Sachs further argues where a defendant has disavowed a desire for standby counsel and cannot be forced to pay his attorney's fees, an attorney should not be forced to work without compensation in order to comply with a court order. *Id.*, 5. In addition, Podvey Sachs asserts that any judicial power to appoint an attorney must be exercised subject to the Fifth Amendment's due process, takings and equal protection clauses and the thirteenth amendment's prohibition against involuntary servitude.[16] Reply Brief, 8–16.

The federal standard for appointment of counsel by the district court "for any person financially unable to obtain adequate representation" is codified in the Criminal Justice Act, 18 U.S.C.A. § 3006A. The purpose of section 3006A is to guarantee that an indigent person charged with a criminal offense has the assistance of counsel. *See*, Preamble to Criminal Justice Act of 1964, Pub. Law 88–455, 78 Stat. 552, 18 U.S.C.

---

**16.** Podvey Sachs raises the constitutional issue of a taking for the first time in its Reply Brief. Reply Brief, 8–16.

3006A. Compensation for the services of a court appointed attorney is codified under 18 U.S.C.A. § 3006A(d).

Bertoli has not established or even suggested he is unable to pay counsel. On the contrary, it appears the opposite is the case. The Government states that evidence obtained during the Cayman Islands Depositions reveals that Bertoli has control of off-shore funds. Opp. Brief, 2 (referring to depositions of Sydney Coleman, records from Swiss Bank & Trust Corp.); *see also* Government's Moving Brief in Support of Motion to Alter Bail (proffering as evidence that Bertoli has control of four million dollars in Andora).[17] Accordingly, Bertoli does not fall within the class of persons intended to be benefitted by section 3006A(d). In any event, Bertoli would be required to establish unequivocally under oath, he is financially destitute, unable to retain counsel.

 There is no statutory provision in the Criminal Justice Act that provides compensation for an attorney or standby counsel for a non-indigent. Nor does it appear the Third Circuit has had occasion to reach this question. Although not faced with the issue of compelling service without compensation, the *Accetturo* court implied, in dicta, there would be no constitutional taking. The court stated:

> In *United States v. Dillon*, 346 F.2d 633, 635 (9th Cir.1965), *cert. denied*, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966), the court stated that *"representation of indigents under court order, without a fee, is a condition under which lawyers are licensed to practice as officers of the court."* Accordingly, the court *rejected* the contention that an appointment to represent an indigent without compensation constituted a *"taking"* in the constitutional sense of counsel's services. The court held there was *no unconstitutional taking when counsel "performs an obligation imposed upon him by the ancient traditions of his profession and as an officer assist-*

*ing the courts in the administration of justice." Id.* at 636; *see also Williamson v. Vardeman*, 674 F.2d 1211, 1214 (8th Cir.1982) ("Attorneys may constitutionally be compelled to represent indigent defendants without compensation.").

842 F.2d at 1413; *see also, State v. Rush*, 46 N.J. 399, 410, 217 A.2d 441 (1966) (court rejected argument of defense counsel, appointed to represent indigent defendant, that appointment without compensation is a constitutional taking, because of attorney's duty owed to court). These decisions are grounded on the rationale that an attorney, as an officer of the court, has an obligation to serve the court with or without compensation.

In rendering its decision that the requirement of service without compensation is not an unconstitutional taking of property, the *Williamson* court explained: "[C]ompulsion of service is not a taking because there is a preexisting duty to provide such service.... The source of this duty is a lawyer's status as an officer of the court." 674 F.2d at 1214–1215.

In *Family Div. Trial Lawyers of Superior Court–D.C., Inc. v. Moultrie*, 725 F.2d 695 (D.C.Cir.1984), the Circuit found that pro bono representation of indigents could be unconstitutional if "the burden on particular attorneys could become so excessive as to rise to the level of a 'taking' of property." 725 F.2d at 706. The *Moultrie* decision was narrowly confined to family division attorneys, who by voluntarily seeking compensated cases were required to take on uncompensated cases. *Id.* The court stated:

> [I]f the superior court appointment system denies the appellants the opportunity to maintain a remunerative practice as family lawyers before the Family Division, and that specialty practice is determined to be a property interest it might effect an unconstitutional taking.

*Id.*

In this case, it appears Bertoli is not an indigent defendant. Moreover, the repre-

---

**17.** As of the date of this opinion, Bertoli has not contested the allegations concerning his control of four million dollars in Andora.

sentation here commenced by mutual agreement of Bertoli and Podvey Sachs, not by order or appointment of this court. To this end, Podvey Sachs voluntarily agreed and undertook representation of Bertoli. Podvey Sachs has an obligation to see this responsibility to conclusion. It does not have the right to drop out as it wishes. Podvey Sachs has significant obligations to its client and to the court. These voluntarily undertaken obligations should not and are not dependent upon money.

Podvey Sachs has failed to state any statutory provision requiring, or even permitting, payment by the United States of attorney's fees to Podvey Sachs for acting as standby counsel to Bertoli, an individual who has not established under oath, his indigency. Moreover, it appears no such statutory provision exists requiring or permitting the United States to pay Podvey Sachs' attorney's fees and costs where the defendant is a non-indigent. Additionally, Podvey Sachs has failed to inform this court of any "excessive burden" that could reasonably effect a taking in constitutional terms. *See, Moultrie,* 725 F.2d at 706-07. In fact, Tolomeo characterized the law firm's work on the case to date as follows:

> [T]he vast majority of the legal work undertaken by attorneys with this firm on behalf of defendant Bertoli was spent on preparing pretrial motions and in opposing to the [sic] Cayman Island discovery sought by the Government. For the most part, *any substantive factual preparation for trial was done by paralegals under my supervision....* The roles of Franklin M. Sachs and H. Richard Chattman have been, at most, strate-

gic with respect to any substantive trial preparation.

Supp. Tolomeo Certif., 1 (emphasis added). Certainly from Tolomeo's description of Podvey Sachs' work to date neither Podvey Sachs nor Sachs or Chattman individually are being denied "the opportunity to maintain a remunerative practice." *Moultrie,* 725 F.2d at 706. Accordingly, the motion for reimbursement of fees for services is denied.

### 2. *Costs and Fees*

■ Podvey Sachs contends that pursuant to Rule 15(c) of the Federal Rules of Criminal Procedure, the Government should reimburse Podvey Sachs' expenses at the Cayman Island Depositions because they were brought at the Government's request. Moving Brief, 6–7; Reply Brief, 3–4. Podvey Sachs argues that a court should order this reimbursement regardless of whether Bertoli can afford the travel and subsistence expenses.[18] *Id.,* 4.

Rule 15(c) states:

> Whenever a deposition is taken at the instance of the government, or whenever a deposition is taken at the instance of a defendant who is unable to bear the expenses of the deposition, the court *may direct* that the expense of travel and subsistence of the defendant and the defendant's attorney for attendance at the examination and the cost of the transcript of the deposition shall be paid by the government.

Fed.R.Crim.P. 15(c). "This rule introduces a new feature for the purpose of protecting the rights of an indigent defendant." *Id.,* Advisory Committee Notes 1944. Pursu-

**18.** Cannistraro made a similar request for the payment of travel, subsistence and transcript costs incurred by his counsel while conducting document review in the Cayman Islands by letter, dated 8 August 1991. The Government objected to this request on the ground that Fed.R.Crim.P. 15 does not require that the Government bear the defendant's costs when it seeks Rule 15 depositions, but rather states that the court "may direct" the Government to bear such costs. Government's letter brief, dated 14 August, in opposition to Cannistraro's request for costs, 2. The Government further objected on the ground that the only reason it must conduct discovery in the Cayman Islands is because Cannistraro and the other Defendants "chose to hide behind the secrecy laws of the Cayman Islands to accomplish their securities fraud and then to funnel their enormous profits into Cayman Islands bank accounts." *Id.* The Government also objected on the ground that there is evidence which suggests Cannistraro has interests in off-shore accounts and can, therefore, afford to send his attorney to the Cayman Islands proceedings. *Id.* Cannistraro's request was denied on 19 August 1991. Letter from court, dated 19 August 1991.

ant to Rule 15(c) "the court *may* direct" the Government to pay expenses and subsistence costs when the Government requests a deposition. Clearly, imposing this financial burden on the Government is at the court's discretion. *See e.g. Ray v. United States*, 367 F.2d 258, 264 n. 6 (8th Cir.1966), *cert. denied*, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967).

Podvey Sachs relies on *United States v. Acevedo–Ramos*, 605 F.Supp. 190 (D.P.R. 1985), to support the position that courts will order the government to pay a defendant's expenses when the government requests a deposition even when the defendant is not indigent. Moving Brief, 6. Podvey Sachs' reliance on *Acevedo–Ramos* is unwarranted. In *Acevedo–Ramos*, the defendant opposed the Rule 15 motion because he could not afford to travel to the state where the Government requested the deposition to take place. 605 F.Supp. at 192. This objection was supported in the record and was considered by the court in ordering travel expenses for the defendant's attorney. *Id.*

In the instant case, no evidence has been submitted to indicate that the Cayman Island Depositions caused a financial hardship to either Bertoli or Podvey Sachs. Indeed, evidence suggests Bertoli has significant assets or control of such assets in offshore bank accounts. *See* Government's Brief in Support of Motion to Alter Bail Conditions, 13–14 (proffering as evidence that Bertoli has control of four million dollars in Andora).[19] Moreover, on 12 November 1991 Bertoli filed his own motion to take foreign depositions in the Cayman Islands after vehemently opposing all of the Government's previous attempts to obtain evidence from the Cayman Islands. Bertoli, represented at the time by Podvey Sachs, certainly could have filed a Rule 15 motion at the same time the Government filed which would have avoided undue delay and unnecessary expense to all parties

concerned. Had Bertoli filed at the same time as the Government, the Government's Motion would have served both parties in the case, and Rule 15(c) would be irrelevant.

### CONCLUSION

For the reasons set forth above, the offer of Podvey Sachs to voluntarily serve as standby counsel is accepted; accordingly, the Motion to Withdraw is moot.[20] The Motion for Reimbursement is denied.

---

**19.** As noted, Bertoli has not contested the Government's assertion.

**20.** As discussed above, if Meanor had not made the voluntary offer, the Motion to Withdraw would be denied. If Bertoli, at any time, seeks

the representation of counsel and does not select counsel able to readily step in for the approaching trial, Podvey Sachs, specifically Sachs or Chattman, will be required to step in as trial counsel.