**UNITED STATES of America, Appellee**

v.

**Richard O. BERTOLI**

**Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, court-appointed standby counsel for defendant Richard O. Bertoli, Appellant.**

**No. 92–5182.**

United States Court of Appeals, Third Circuit.

Argued Aug. 19, 1992.

Decided May 7, 1993.

H. Curtis Meanor (argued), Marianne C. Tolomeo, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, NJ, for appellant.

Edna B. Axelrod, Michael Chertoff, U.S. Attys., R. David Walk, Jr. (argued), Asst. U.S. Atty., Newark, NJ, for appellee.

PRESENT: HUTCHINSON, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellant law firm, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello ("Podvey, Sachs" or "firm"),[1] seeks to appeal an order of the United States District Court for the District of New Jersey appointing the firm standby counsel for its former client, Richard Bertoli ("Bertoli"), in the government's criminal action against him. In the course of pretrial proceedings in that action,

Bertoli discharged Podvey, Sachs and elected to proceed *pro se.* He does not qualify for indigent status. Among other things, the order requires the firm to serve without compensation, requires the presence of a Podvey, Sachs attorney at all pretrial proceedings and dictates the presence of two named partners of the firm throughout the trial which is estimated to take two to four months. On the merits, Podvey, Sachs presents the issue in the form of a dilemma, contending that the district court lacks power to either compel it to provide free legal services for a client who can afford a lawyer but chooses to represent himself, or to compel the client to pay for services he does not want. The firm, nevertheless, represents that it remains willing to provide some standby services free of charge. It would have us treat them as freely given *pro bono.* Podvey, Sachs is not willing, however, to provide free standby counsel for the duration of the trial.

The firm asserts that this Court has appellate jurisdiction under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The government contends the order is not appealable under *Cohen* nor otherwise reviewable until a final order is entered holding Podvey, Sachs in contempt. We agree with the government that *Cohen* does not apply because the order is subject to review on appeal from a final order of contempt. Nevertheless, because the order raises fundamental, unsettled issues concerning a district court's inherent power over the attorneys who practice before it we will treat the firm's appeal as a petition for a writ of mandamus or prohibition.

So treated, we hold that the district court has inherent power to compel attorneys who have entered an appearance for a criminal defendant in a complex criminal case to continue to serve, but as standby counsel for a client who later exercises his right to proceed *pro se.* We also hold that the extent of the services that can be required, though not unlimited, is within the sound discretion of a district court; but in exercising its discretion,

---

1. A member of Podvey, Sachs, H. Curtis Meanor, signed the notice of appeal and the Clerk of this Court mistakenly captioned him as the appellant in the matter. Podvey, Sachs has moved this court to amend the caption to reflect the firm as the appellant. Since the record demonstrates that the firm is the party seeking relief from the district court's order, we will grant that motion.

the district court should balance (1) the stage of the proceeding at which the defendant makes his election, whether it be before, during or after trial; (2) the complexity of the case; (3) the disruptive effect an uncounseled defendant may have on his own rights and the rights of any co-defendants to a fair and speedy trial; and (4) the extent to which performance of the services required will adversely affect both the attorney called upon to perform them and his firm as well as their professional responsibilities to other clients.

After considering the factors set out above, we are unable to say, under the circumstances of this case, that the district court clearly abused its discretion when it decided Podvey, Sachs' offer, which did not provide for an attorney's presence in the courtroom during trial, was inadequate. We do, however, hold that the district court clearly abused its discretion when it added to Podvey, Sachs' offer a requirement that the firm provide an attorney at all pretrial proceedings including the taking of depositions in the Cayman Islands and have one of two named partners present in court throughout the trial. Therefore, we will issue a writ prohibiting the district court from requiring the firm to send an attorney to the Cayman Islands to act as standby counsel during the upcoming depositions there or from compelling either Franklin H. Sachs ("Sachs") or H. Richard Chattman ("Chattman") to be present throughout Bertoli's trial. Finally, we will direct the district court to modify its order to provide that it is expressly without prejudice to the firm's right to seek compensation for its services upon conclusion of the trial and remand the case for further proceedings consistent with this opinion.

## I.

On June 16, 1989 a federal grand jury returned an indictment against Bertoli, Leo Eisenberg ("Eisenberg") and Richard Cannistraro ("Cannistraro") charging them with various violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961 et seq. (West 1984 & Supp.1992). A six count superseding indictment was returned on September 29, 1989. Prior to arraignment and before he had secured representation, Bertoli informally moved for recusal of the district court judge assigned to the case. Bertoli then retained Podvey, Sachs as counsel and Attorney Sachs formally renewed the recusal motion. At his arraignment on November 6, 1989, Bertoli was represented by Attorneys Sachs and Chattman, who entered appearances for the firm. Also at arraignment, the government served the firm with a motion for leave to take depositions in the Cayman Islands pursuant to Federal Rule of Criminal Procedure 15.

Extensive pretrial proceedings followed. Lawyers from Podvey, Sachs represented Bertoli from November 1989 through August 1991 in all aspects of them. Among other things they sought discovery of matters related to Bertoli's recusal motion and also moved for a transfer of the motion to a different district court judge. The court denied the motions in an order dated March 22, 1990. Bertoli's motion for reconsideration was denied on April 12, 1990. Bertoli through Podvey, Sachs then filed a petition for mandamus with the Court, which we denied on May 3, 1990. A second recusal motion filed by co-defendant Cannistraro, which Bertoli joined, was denied on August 16, 1990. We affirmed that order on October 15, 1990.

Meanwhile, on June 20, 1991 Sachs wrote to the district court asking when oral argument might be had on certain other pretrial motions that were filed for Bertoli. Responding the next day, the district court stated oral argument was not a necessity in light of the extensive briefing the parties had already submitted, but because Sachs had asked for it, oral argument would be scheduled for July 3, 1991. In its response, the district court gratuitously noted that it took the parties three to four months to prepare their motions and supporting briefs, but that it was able to accommodate Sachs' request, made a little more than five and one-half weeks after the motions were submitted, to schedule a hearing "at the earliest possible opportunity so as to avoid any unnecessary delay." Letter dated June 21, 1991, Appendix (App.) at 104–05.

On June 24, 1991 Sachs withdrew Bertoli's request for oral argument on the pretrial motions. In a letter dated June 25, 1991 the district court ordered all defendants, accompanied by trial counsel, to come to court for the July 3, 1991 hearing. Sachs had a conflict[2] and advised the court by letter on June 26, 1991 that another Podvey, Sachs partner would be at the hearing in his place, although he intended to be Bertoli's trial counsel. The district court responded the same day with a requirement that Sachs personally appear, stating "[b]ecause I have specific inquiries to address to you, the appearance of your partner ... will not suffice. May I suggest he take your place at the [other] meeting...." Letter dated June 26, 1991, App. at 110. Podvey, Sachs immediately filed a petition for a writ of mandamus and asked this Court to stay the district court order compelling Sachs' attendance. On July 2, 1991 the Honorable Leonard I. Garth, sitting as a single judge of this Court, refused to stay the hearing but did stay the part of the court's order that required Sachs to appear personally.[3]

Immediately before the Cayman Islands depositions were scheduled to begin, Bertoli asked the district court for leave to proceed *pro se* during the depositions but otherwise to continue with Podvey, Sachs as his counsel. The court held a hearing on Bertoli's request on September 3, 1991, one day before the depositions were to begin. At this hearing Bertoli was represented by Marianne C. Tolomeo ("Tolomeo"), a senior associate with Podvey, Sachs. The district court questioned Tolomeo about Sachs' and Chattman's whereabouts and the basis for Bertoli's motion to proceed *pro se*. The court stated "if Mr. Bertoli does go *pro se* and I permit

that, I will appoint standby counsel and it will be one of Mr. Sachs or Mr. Chapman [sic] to go down to the Cayman Islands." App. at 166. The district court advised Bertoli that it would not permit Bertoli to represent himself at the depositions and also continue with counsel at trial. Bertoli chose to proceed *pro se*. Upon questioning by the court, Bertoli testified that he had already acted *pro se* in "eight to nine cases" involving securities litigation. *Id.* at 184. Bertoli also said that he chose to proceed *pro se* despite an ability to pay counsel and that he had no problem with the firm's representation.

The district court found that Bertoli's election was knowing, intelligent and informed and ordered Podvey, Sachs to act as standby counsel until the Cayman Islands depositions were concluded, with leave to file a motion to withdraw as standby counsel thereafter. As standby counsel, Tolomeo attended the Cayman Islands depositions from September 4, 1991 through September 17, 1991. Although Bertoli requested her assistance in questioning the witnesses, Tolomeo refused because the district court had refused to permit hybrid representation. Tolomeo did consult with Bertoli, made suggestions and took notes. In securing the attendance of Tolomeo at the depositions Podvey, Sachs incurred expenses of $13,023.94. These expenses have not been reimbursed.

On November 8, 1991 Podvey, Sachs moved to withdraw as standby counsel and sought reimbursement for the costs and attorney's fees incurred during the depositions. At a hearing on November 15, 1991 the district court told Tolomeo that it was inclined to deny the firm's motion to withdraw,

---

**2.** Sachs had learned on June 25, 1991 that one of his clients needed him to attend a meeting on July 3, 1991 in Norwood, Massachusetts. According to Sachs, the case had "international ramifications" and involved a potential loss to Sachs' client in excess of $50,000,000.00. App. at 101. Sachs included the details of this meeting in his June 25, 1991 letter to the court and in an affidavit dated June 28, 1991.

**3.** United States Court of Appeals for the Third Circuit Internal Operating Procedure 10.5 states, in relevant part:

10.5.1 A single judge may entertain and may grant or deny any request for relief which, under the Federal Rules of Appellate Proce-

dure or an applicable statute, may properly be sought by motion, except that a single judge may not dismiss or otherwise determine an appeal or other proceeding. The action of a single judge may be reviewed by the court. Third Circuit I.O.P. 10.5.1. The record does not show that anyone sought review by the court. Further,

10.5.2 Without limiting IOP 10.5.1, this court as a matter of practice refers to a single judge, the following motions:
(a) Stay Pending Appeal or Mandamus (generally only in emergency situations)[.]
*Id.,* I.O.P. 10.5.2(a).

that it would not authorize the payment of government funds for the firm's expenses and that "at the time of trial either Mr. Sachs or Mr. Chapman [sic] will be present." *Id.* at 252–53. The court continued:

It's not beyond the pale to consider [Bertoli] might change his mind [about proceeding *pro se* ] in the middle of the trial. Your firm is intimately, thoroughly familiar with what's going on here.

It was represented to the Circuit, through [another Podvey, Sachs partner], that the firm represents Mr. Bertoli. There was a submission to the Circuit that in point of fact Mr. Chapman [sic] or Mr. Sachs could handle it. That's what happened this summer.

I am going to require that your firm continue. You may continue in the pretrial matters down in the Cayman Islands. If Mr. Chapman [sic] or Mr. Sachs wish to go, that's fine with me. At trial, one of the two will be here.

*Id.* at 255–56. When Tolomeo suggested that the court's directions were "purely punitive," the court replied "[t]hat's silly and I find objection to that. There is no basis to suggest that.... If you want to go to the Circuit on it, file an interlocutory appeal." *Id.* at 256. As the discussion continued, the court once again said that either Sachs or Chattman would have to be present as standby counsel during trial. When Tolomeo asked why the court would not allow her to appear at trial since the court had found her capable of handling pretrial matters, the court responded:

Because Mr. Sachs represented that either he or Mr. Chapman [sic], when he went to the Circuit this summer, could handle the matter. That was the representation. That's the basis for it and that's how it's going to go.

If you want to go to the Circuit, be my guest.

*Id.* at 259. The court then refused to order Bertoli to pay Podvey, Sachs for its time and expenses. The court agreed to delay entering a formal order until the government had an opportunity to file a brief on the issue.

The government issued a letter brief on November 22, 1991. It took the position that standby counsel was necessary but that it need not be Podvey, Sachs.

On December 9, 1991 Tolomeo filed an affidavit stating that, to date, most of the substantive work on the case had been done by paralegals under her supervision and that the roles of Sachs and Chattman had been "at most, strategic." *Id.* at 270. She reiterated Bertoli's desire to proceed *pro se* and without standby counsel and informed the court of Sachs' and Chattman's billing rates. *Id.* at 271.

Meanwhile, in January 1992 a federal grand jury returned a second superseding indictment against Bertoli and Cannistraro.[4] The new indictment added an obstruction of justice charge against Bertoli and amended the RICO and fraud charges. On January 27, 1992 the district court arraigned Bertoli on the new indictment. Bertoli requested a one-week continuance before pleading in order to decide whether he would continue to proceed *pro se* or request an attorney. Bertoli advised the court that he had been in contact with attorneys about the new charges. The court denied Bertoli's request for a continuance and entered a plea of not guilty for him.

At the same hearing, the district court heard additional argument on Podvey, Sachs' motion to withdraw as standby counsel. During the course of that argument the firm, represented by partner H. Curtis Meanor ("Meanor"), questioned the constitutionality of an order directing a law firm to act as standby counsel for a non-indigent without compensation. Meanor said that Podvey, Sachs would not offer to provide full-time standby counsel throughout the trial, but would offer to assist Bertoli without charge as follows:

1. Bertoli could have full use of the firm's law library;

2. The firm would make available an attorney either in person or by phone to consult with Bertoli about any aspect of the case;

---

4. The other co-defendant, Eisenberg, had pled guilty and was named as an unindicted co-con-

spirator. We are now advised that Cannistraro has also pled guilty. *See infra* at n. 5.

3. The firm would make attorneys available for brief court appearances during the trial if the court deemed it necessary; and

4. The firm would retain discretion as to who would appear depending on the complexity of the issue.

*Id.* at 290–91.

In an opinion dated February 11, 1992 the district court first stated it was willing to accept Podvey, Sachs' offer of limited assistance, but then added conditions. *See United States v. Cannistraro*, 799 F.Supp. 410, 420 (D.N.J.1992). It characterized the presence of standby counsel in this matter as "necessary" and "essential" and stated that absent Podvey, Sachs' offer, the renewed motion for leave to withdraw would have been denied. *Id.* at 420 n. 13. The district court denied the firm's request for compensation from public funds based on Bertoli's ability to pay and the firm's request for reimbursement of expenses already incurred in its standby capacity. *Id.* at 423, 424.

Although it had nominally accepted the firm's offer, the conditions the district court added in the course of its opinion made the services required considerably more onerous. The February 11, 1992 order states:

Counsel's presence will be required at all pretrial hearings and at trial from the time of jury selection through the return of a verdict; and ... in the event Bertoli revokes his election to proceed *pro se* or becomes unable to proceed *pro se*, either Sachs or Chattman will be required to serve as trial counsel.

Order of February 11, 1992 at 2, App. at 341; *see also Cannistraro*, 799 F.Supp. at 421. In its opinion, the court went on to state:

The trial representation which would be provided by Sachs and Chattman would clearly satisfy the Model Rule of Professional Conduct mandate [specifically Rule 1.1 and comment regarding competent representation]. Indeed, no other counsel could meet this mandate without extensive

delays beyond those already experienced in this litigation. A trial attorney who has not participated in the extensive pretrial proceedings up to date would not be an adequate substitute for Sachs and Chattman because he or she would not have had the same exposure to the dynamics and extensive pretrial proceedings of this case.

.    .    .    .    .

... Sachs and Chattman are the attorneys from Podvey Sachs with the requisite knowledge and familiarity with the case to serve as trial counsel, if necessary. *No other attorney from Podvey Sachs could readily begin representation of this case at any point* at which Bertoli may change his mind or becomes unable to continue pro se.

*Cannistraro*, 799 F.Supp. at 420–21 (emphasis added). At the November 15, 1991 hearing on Podvey, Sachs' motion to withdraw, the court again made it clear that either Sachs or Chattman would be required to appear as standby counsel during the trial, and that Tolomeo's presence would not suffice:

Now, the point of the fact is I'm not going to relief [sic] Podvey, Sachs of the responsibilities. I have agreed to mitigate that to allow you, Miss Tolomeo, to go to the Cayman Islands or to appear at these pretrial conferences. I will not mitigate that with regard to trial. I again state that Mr. Sachs or Mr. Chapman [sic] will be here.

App. at 258.

Subsequent to oral argument on this appeal, the district court entered an order scheduling further pretrial proceedings including additional Cayman Islands depositions and established May 1993 as a target trial date. At a subsequent hearing[5] the court reiterated the requirement that either Sachs or Chattman be present in court at trial:

---

5. After that hearing, the firm filed a motion asking this Court to stay the proceedings pending resolution of this appeal. We granted the stay in part on April 8, 1993, and at the same time granted the firm's motion to supplement the appendix by adding additional material. In addi-

tion, on April 23, 1993, we entered an order staying the commencement of evidentiary hearings scheduled to begin on April 26, 1993 and the commencement of the trial scheduled to begin May 3, 1993.

MS. TOLOMEO: I would ask at this time if we don't get the [appellate] decision before April 26, if you would stay the order with respect to our status until we get a decision.

THE COURT: No, I refused that earlier. I'm not going to stay it. Mr. Sachs or Mr. Chapman [sic] will be at trial.

MS. TOLOMEO: Your Honor, two things on that. One, I'm not sure that you won't be destroying the subject of appeal if you force us to appear while it's still on appeal.

THE COURT: I'm sorry, Mr. Chapman [sic] or Mr. Sachs will be here on trial.

MS. TOLOMEO: I don't believe your order required that. You required someone from our office here in the event that Mr. Bertoli could not proceed.

THE COURT: No, that was the suggestion of Mr. Meanor. One of those two will be trial counsel. Look at it again. I'm not going to hear it now.

Transcript of March 12, 1993 Hearing at 32–33.

Podvey, Sachs filed a motion for reconsideration of the February 11, 1992 order on February 21, 1992. The district court denied reconsideration on March 27, 1992. On April 1, 1992, Podvey, Sachs filed a timely notice of appeal from the orders of February 11, 1992 and March 27, 1992.

The firm has, however, continued to provide counsel to Bertoli in a standby capacity ever since the defendant undertook his own representation. Tolomeo has attended most of the pretrial proceedings and submitted many papers on Bertoli's behalf but Sachs himself has not appeared for Bertoli since October 1990 nor signed any papers for him since June 1991. Chattman last appeared for the defendant on July 3, 1991 and has not submitted any papers since May 1991.

When the firm filed this appeal, the trial had not yet been scheduled. Recently, on March 3, 1993, the district court scheduled it for May 3. The government estimates it will take two to three months. Bertoli thinks it will take at least four months. At oral argument before this Court, Podvey, Sachs expressly renewed the terms of the *pro bono* offer it made to the district court.

## II.

Before we can consider the merits of the district court's order, we must be satisfied that this Court has jurisdiction to review an order compelling a lawyer or law firm to provide free standby counsel to a non-indigent defendant absent citation for contempt.

### A.

■ With certain exceptions not relevant here, only final orders are appealable. *See* 28 U.S.C.A. § 1291 (West Supp.1992). Ordinarily, a final order ends the litigation on the merits as to all claims and all parties and leaves nothing for the trial court to do but execute the judgment. *See Van Cauwenberghe v. Biard,* 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988); *Republic Natural Gas Co. v. Oklahoma,* 334 U.S. 62, 68, 68 S.Ct. 972, 976–77, 92 L.Ed. 1212 (1948). In the criminal context, finality comes with the conviction and imposition of sentence. *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989). Until that time, appellate review is prohibited. *Id.*

■ In *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the United States Supreme Court tempered the rigidity of the final order doctrine with a flexible, practical interpretation of section 1291. The flexibility given by *Cohen,* commonly called the collateral order doctrine, permits appeal of some district court orders that do not terminate the entire case, or even a discrete part of it. *See* 15A Charles A. Wright et al., Federal Practice & Procedure § 3911, at 29 (1992). Under *Cohen,* the finality required is no more than the finality of the order in question. *Id.*[6]

---

**6.** *Cohen* permits an immediate appeal of interim orders that are not final under Federal Rule of Civil Procedure 54 or certified under 28 U.S.C.A. § 1292(b) (West Supp.1992), a statute permitting certain interlocutory appeals upon the request of the district court with the permission of the court of appeals.

■ To be appealable under *Cohen*, an order must meet each of the following three requirements: it must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action and (3) be effectively unreviewable on appeal from an otherwise final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978); *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 54 (3d Cir.1991).

Neither party to this appeal contests the presence of the second factor, the importance of the issue or its collateral nature; nor do we. They do hotly dispute the conclusiveness of the order directing Podvey, Sachs to act as Bertoli's standby counsel and the possibility of its effective review in the future.

1.

■ The government says the order is tentative because there is lingering doubt about Bertoli's determination to present his case *pro se*. The district court has, however, unconditionally required either Sachs or Chattman to be present throughout Bertoli's trial. Accordingly, reconsideration is neither likely nor necessary if Bertoli changes his mind. The order entered against Podvey, Sachs was issued "with the expectation that [it would] be the final word on the subject." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988). Although the district court could amend the order, it is unlikely to do so. It has already held a hearing, issued an extensive opinion on the matter and denied the firm's motion for reconsideration. The chance that Bertoli might abandon his *pro se* position does not leave any doubt that the district court will insist on compliance with its order; in fact, that very possibility is addressed by the order itself.

The government also argues that the order directing Podvey, Sachs to continue to provide services to Bertoli without compensation

is tentative because the firm may have the order amended if it can demonstrate a crushing burden. Again, the record nowhere indicates that the district court will revisit its decision on this basis. Indeed, in its motion to be removed as standby counsel as well as in its motion for reconsideration the firm made clear the financial and professional burdens on which its objections were based.[7] The district court noted these arguments but rejected them in a lengthy opinion. Accordingly, we conclude that the district court's orders adding requirements to the services offered by Podvey, Sachs and denying reconsideration demonstrate that the existence and extent of Podvey, Sachs' duty to continue to provide standby representation to its former client has been conclusively determined. *See Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2457–58. Unlike the conditional class certification appealed in *Lusardi v. Xerox Corp.*, 747 F.2d 174, 177–78 (3d Cir.1984), there is no apparent prospect that the district court itself may alter the ruling. In *Lusardi*, the district court clearly indicated the possibility of future decertification. *Id.* at 177. The mere presence of discretionary power to reopen a ruling is not sufficient to make the order inconclusive for *Cohen* purposes. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 & n. 14, 103 S.Ct. 927, 935 & n. 14, 74 L.Ed.2d 765 (1983): *see also Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 345, 105 S.Ct. 3180, 3201–02, 87 L.Ed.2d 220 (1985) (Brennan, J., dissenting). It is conclusive when no further consideration is contemplated by the district court. *Moses H. Cone*, 460 U.S. at 12–13, 103 S.Ct. at 935–36; *Walters*, 473 U.S. at 345, 105 S.Ct. at 3201–02; *FTC v. Standard Fin. Management Corp.*, 830 F.2d 404, 407 (1st Cir.1987).

The Supreme Court has distinguished two types of non-final orders: orders " ' "inherently tentative" ' " and those that "although technically amendable, are 'made with the expectation that they will be the final word on the subject addressed.' " *Gulfstream*, 485

---

**7.** The firm produced evidence of the billing rates of Sachs and Chattman apparently to show the losses it would suffer in support of its argument that the court's order violated the Takings Clause. In this Court it does not expressly contend that the burden the order imposed on it was so crushing that it threatened its existence, and it has not included in the appendix the material it presented to the district court on the issue of hardship to it.

U.S. at 277, 108 S.Ct. at 1137 (quoting *Moses H. Cone*, 460 U.S. at 12 n. 14, 103 S.Ct. at 935 n. 14 (quoting *Coopers & Lybrand*, 437 U.S. at 469 n. 11, 98 S.Ct. at 2458 n. 11)). A district court's order will be considered tentative only if the possibility of modification or reconsideration "might reasonably be expected in the ordinary course of litigation." *Moses H. Cone*, 460 U.S. at 12 n. 14, 103 S.Ct. at 935 n. 14. Here, the district court has conclusively determined the disputed question and we think that any possibility that it would amend the order is too remote to deny finality.

### 2.

■ Nevertheless, because all of the *Cohen* factors must be satisfied before an interim order is appealable under that doctrine, we must still consider whether the district court's order is effectively unreviewable if we do not entertain it now. "To be appealable under ... the collateral-order doctrine ... an order must ... be such that review postponed will, in effect, be review denied." *Zosky v. Boyer*, 856 F.2d 554, 561 (3d Cir.1988), *cert. denied*, 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989). "[A]n order is 'effectively unreviewable' only ' "where [it] involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.' " ' " *Praxis Properties*, 947 F.2d at 58 (quoting *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 499, 109 S.Ct. 1976, 1978–79, 104 L.Ed.2d 548 (1989) (other citations omitted)).

Podvey, Sachs argues that an order directing it to provide professional services to a client who does not want them is, by its very nature, effectively unreviewable after judgment.

The order in question would, however, be reviewable on appeal from a final order of contempt and Podvey, Sachs as a non-party can immediately appeal a contempt citation. *See, e.g., United States v. Rogers Transp., Inc.*, 793 F.2d 557 (3d Cir.1986) (non-party may immediately appeal civil contempt order); *see also United States v. Sciarra*, 851 F.2d 621, 628 (3d Cir.1988) (Court has consistently held that non-party witness may obtain appellate review of discovery order upon disobedience and contempt).

In *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), the Supreme Court held an order denying a motion to quash a grand jury subpoena may only be appealed if the party disobeys the subpoena and stands in contempt. *Id.* at 532, 91 S.Ct. at 1581–82; *see Cobbledick v. United States*, 309 U.S. 323, 326, 328, 60 S.Ct. 540, 541–42, 542–43, 84 L.Ed. 783 (1940) (neither party nor non-party witness may appeal order denying motions to quash grand jury subpoenas without first suffering contempt). We have similarly stated that "the denial of a motion to quash a grand jury subpoena is not a final order for the purposes of an appeal unless and until the party to whom the subpoena is directed disobeys its commands and is subsequently cited for contempt." *In re Grand Jury Matter*, 802 F.2d 96, 98 (3d Cir.1986). In *United States v. Accetturo*, 842 F.2d 1408 (3d Cir.1988), we exercised appellate jurisdiction over an order directing counsel to serve involuntarily as trial counsel after counsel had disobeyed it and was held in contempt. *Id.* at 1411–12.

From these cases the government would have us draw a brightline rule that non-parties can never seek appellate review of an order directed against it without suffering contempt.

The issue of a non-party's right to appeal arises frequently in discovery when a non-party seeks to challenge an order compelling the disclosure of allegedly privileged information. The general rule in federal courts is that the individual must stand in contempt to make the order immediately reviewable. *See Cobbledick*, 309 U.S. at 328, 60 S.Ct. at 542–43; *Alexander v. United States*, 201 U.S. 117, 122, 26 S.Ct. 356, 358, 50 L.Ed. 686 (1906). In *Ryan* the Supreme Court stated:

[W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomi-

tant possibility of an adjudication of contempt if his claims are rejected on appeal. *Ryan,* 402 U.S. at 532–33, 91 S.Ct. at 1581–82. A strong notion of finality

> avoid[s] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause. These considerations of policy are especially compelling in the administration of criminal justice.

*Cobbledick,* 309 U.S. at 325, 60 S.Ct. at 541.

Thus, this Court prefers to postpone review of an order directed against a non-party until the case is concluded in the district court or until the non-party has been held in contempt. *See, e.g., Gross v. G.D. Searle & Co.,* 738 F.2d 600, 604 (3d Cir.1984) (contempt proper method to challenge subpoena issued to non-party). We are especially cautious in using *Cohen* to avoid the general rule that a non-party cannot appeal without suffering contempt when application of *Cohen* would make a set of orders that has many members immediately appealable. We expressed our fear of routine appealability in such cases in *Borden Co. v. Sylk,* 410 F.2d 843 (3d Cir.1969). There we said "[t]o accept the appellant's view is also to invite a geometrical increase in the already unacceptable delay between the date of filing and trial in the metropolitan district courts.... Our overburdened courts have little time or appetite for such protractions." *Id.* at 846.

We are reminded, however, that the decisions of this Court belie an inflexible rule. In *Sciarra* we stated "a nonparty witness may obtain appellate review of a discovery order absent contempt only if there is no real possibility of disrupting an underlying action." *Sciarra,* 851 F.2d at 629 (footnote omitted). We think the principle stated in this quotation from *Sciarra* has strong policy support, particularly in criminal cases. It is also consistent with the Supreme Court's use of mandamus to decide the issue of an attorney's obligation to accept appointment under section 1915(d) in a civil rights case.[8] Our decision in *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535 (3d Cir.1985) that the attorney against whom sanctions had been ordered could appeal without suffering contempt did not involve the problem of disruption because he had withdrawn from the case. *Holtzman,* therefore, is not controlling.[9] *See also Corporacion Insular de Seguros v. Garcia,* 876 F.2d 254, 256–58 (1st Cir.1989) (no *Cohen* jurisdiction over discovery order absent disobedience and contempt by non-party); *In re Subpoena Served on Cal. Public Utils. Comm'n,* 813 F.2d 1473, 1475–76 (9th Cir.1987) (same). We are unwilling to accept the broad principle advocated by the government that non-parties must always suffer contempt before securing appellate review before the conclusion of the case. Under the circumstances of this case, however, where attorneys have entered an appearance in a criminal case and the district court has reasonably concluded that their withdrawal would disrupt its continuing consideration of the matter, we do not believe that an appeal of right should be recognized.

We have never heretofore held that *Cohen* allows an attorney to appeal an order directing the continued provision of litigation services to a client for whom an appearance has been entered in an ongoing case. Appealability of such orders would pose a substantial likelihood of frequently unacceptable delay and substantially interfere with the fair and speedy disposition of many criminal cases.

---

**8.** In *Mallard,* the Court never considered *Cohen.*

**9.** In *Holtzman,* we held that an attorney who was subject to Rule 11 sanctions could immediately appeal; however, we relied heavily on the fact that the attorney had withdrawn from the case. *Holtzman,* 775 F.2d at 539. There, we distinguished *Eastern Maico Distributors, Inc. v. Maico–Fahrzeugfabrik, GmbH,* 658 F.2d 944 (3d Cir.

1981) on the basis of the attorney's withdrawal. In *Eastern Maico,* we held that we lacked appellate jurisdiction over an interim Federal Rule of Civil Procedure 37 order sanctioning both a party and attorney, partly because of our conclusion that the same parties would be before the court after trial and their interests in challenging the interim order would be preserved until that time. *Id.* at 947.

*Cobbledick,* 309 U.S. at 325, 60 S.Ct. at 541. As the Supreme Court has stated, delay is particularly antithetical to the interests of justice in a criminal case. *Id.; see Ryan,* 402 U.S. at 532–33, 91 S.Ct. at 1581–82. Where a claim is "adequately vindicable" after final judgment, *Cohen* jurisdiction is inappropriate. *Lauro Lines,* 490 U.S. at 501, 109 S.Ct. at 1979–80. Given the availability of contempt as a method to secure review, the third prong of *Cohen* is not met on the facts of this case. Accordingly, we hold that the February 11, 1992 and March 27, 1992 orders of the district court are not final and we lack appellate jurisdiction under *Cohen* and 28 U.S.C.A. § 1291.

### B.

■ Our power to review the district court's order is not, however, wholly dependent on Podvey, Sachs' right to appeal. Though a disputed order is not final, an appellate court may sometimes elect to treat an attempted appeal as if it were a petition for a writ of mandamus or prohibition. It may do so when fundamental undecided issues that implicate not only the parties' interests but those of the judicial system itself are present. *See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 920 F.2d 1127, 1133 (3d Cir.1990) (noting "ample authority" for court to treat appeal as petition for mandamus); *Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068, 1074 (3d Cir. 1983) ("from time to time this Court has chosen to treat improper claims to an appeal as of right as petitions for mandamus"); *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 736 (3d Cir.1983) ("A court may . . . treat an attempted appeal . . . as a petition for mandamus.").

Congress gave federal courts the power to issue writs of mandamus or prohibition in 28 U.S.C.A. § 1651, which states:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C.A. § 1651 (West 1966). Because our power to issue these writs is extraordinary, this Court does not lightly resort to section 1651. Use of this power "must be chary . . . because '[M]andamus must not be used as a mere substitute for appeal.'" *In re School Asbestos Litig.,* 977 F.2d 764, 772 (3d Cir.1992) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1422 (3d Cir.1991)). Appellate courts generally utilize mandamus only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it [has the] duty to do so." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941–42, 87 L.Ed. 1185 (1943). In addition, the petitioner must show a "'clear and indisputable'" right to relief, *Mallard v. United States Dist. Court,* 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) (citation omitted), and even then "exercise of [the] power is largely discretionary." *School Asbestos,* 977 F.2d at 772 (citing *Kerr v. United States Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)). The writ can issue only where there is a "'clear abuse of discretion'" or conduct tantamount to an "'usurpation of [the judicial] power.'" *Mallard,* 490 U.S. at 309, 109 S.Ct. at 1822 (citations omitted); *see School Asbestos,* 977 F.2d at 773. Nevertheless, "'courts have not confined themselves to any narrow or technical definition of the term "jurisdiction."'" *School Asbestos,* 977 F.2d at 773 (quoting *United States v. Santtini,* 963 F.2d 585, 594 (3d Cir.1992)); *see also Mallard,* 490 U.S. at 309, 109 S.Ct. at 1822. Mandamus is particularly appropriate "to further supervisory and instructional goals, and where issues are unsettled and important." *School Asbestos,* 977 F.2d at 773 (citing *Sporck v. Peil,* 759 F.2d 312, 315 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985)).

Thus, our "'application of the "black letter" rules for when mandamus will be issued has not been unwavering.'" *School Asbestos,* 977 F.2d at 773 (quoting *Maloney v. Plunkett,* 854 F.2d 152, 155 (7th Cir.1988)). We have noted that "[s]ome flexibility is required if the extraordinary writ is to remain available for extraordinary situations. 'The writ is a safety valve (one of several safety valves, in fact) in the final-judgment rule, and its proper use cannot be wholly reduced to

formula.'" *Id.* (quoting *Maloney,* 854 F.2d at 155).

In *School Asbestos* we refused to hold that a petitioner for mandamus had to seek certification under 28 U.S.C.A. § 1292(b) (West Supp.1992) before applying for the writ. *Id.* 977 F.2d at 773–74. Instead, we analyzed the reasons for preferring section 1292(b) certification and concluded that they did not automatically preclude a petition raising an issue on which section 1292(b) certification had not been sought and denied. *Id. School Asbestos* demonstrates a flexible approach to the propriety of reaching the merits of a non-final order on mandamus or prohibition in that the mere possibility of other methods of review does not absolutely bar consideration of the petition. *See id.* at 774. We also recognize the principle that "the petitioner must ordinarily have no other adequate means to obtain the desired relief." *Id.* at 772 (citing *Kerr,* 426 U.S. at 403, 96 S.Ct. at 2124); *see also Mallard,* 490 U.S. at 309, 109 S.Ct. at 1822 ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek. . . ."); *Pennsylvania v. Newcomer,* 618 F.2d 246, 248 (3d Cir.1980) ("mandamus should not issue where other adequate remedies exist").

▮ On the facts of this case we do not think that the availability of review after a future contempt order precludes our immediate consideration of some of the basic issues this case presents. While there are sound reasons for denying an appeal as of right under the *Cohen* doctrine, we believe the circumstances of this case are appropriate for mandamus or prohibition. Not only is the order unprecedented, but the adverse consequences that Podvey, Sachs is likely to suffer in its practice or its professional reputation if it is unable to secure review without suffering contempt, while not threatening its very existence, are significant.

Whatever doubts might linger in our minds concerning the use of section 1651 are dispelled by the Supreme Court's use of the writ on an attorney's challenge to a court's power to compel uncompensated service without first requiring contempt. *See Mal-*lard, 490 U.S. at 309–10, 109 S.Ct. at 1822–23. Podvey, Sachs raises issues similar to those involved in *Mallard* that we think, in many respects, can properly be decided pursuant to section 1651. *See also Burkett v. Chandler,* 505 F.2d 217, 224 (10th Cir.1974) (possibility of contempt should not absolutely bar consideration of writ), *cert. denied,* 423 U.S. 876, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975); *United States v. Hemphill,* 369 F.2d 539, 543 (4th Cir.1966) (same).

This is the fourth time interim orders of the district court have been before us in this case. We first heard a petition to require the district court to assign a recusal motion to another judge, which we denied. Next, we stayed an order requiring Sachs to appear at a particular hearing despite a scheduling conflict and the availability of another Podvey, Sachs partner who was familiar with the case. Sachs is now one of the two named lawyers whose presence throughout the trial is required by the order now before us. Finally, despite the pendency of this appeal, we have dealt with a motion to stay an order of the district court to commence trial with Sachs or Chattman present as standby counsel and to provide standby counsel for a second round of depositions in the Cayman Islands even though it appears Bertoli will have local counsel there. *See supra* at 1009 n. 5. Under these circumstances, we will not refuse the firm a hearing solely because the issues presented could be raised in an appeal from a later order of contempt.

### III.

On the merits, Podvey, Sachs contends the district court committed a clear abuse of discretion or usurpation of judicial power in five respects: (1) by determining that standby counsel was necessary and exerting its inherent power to appoint unwilling counsel in that capacity; (2) by choosing Podvey, Sachs as the counsel; (3) by specifically naming two partners from Podvey, Sachs to act as the trial counsel when the law firm as an entity originally represented the defendant; (4) by requiring standby counsel to attend all pretrial proceedings including the taking of depositions in the Cayman Islands; and (5)

by denying them compensation. We will separately address each of these arguments.

## A.

We will first decide whether the district court has an inherent power to require an attorney who has entered a general appearance in a criminal case to provide standby services for a former client who is not indigent and elects to proceed *pro se*. We emphasize that this case does not involve a situation where counsel is a stranger to the litigation and is appointed initially to act as standby counsel. Here an important factor is that the court order imposes a continuing obligation on retained counsel—not a new and independent duty. If the court possesses the inherent power to compel such service, we must consider whether the district court clearly abused its discretion in entering the order at issue.

### 1.

Podvey, Sachs argues generally that the district court lacks the inherent power to appoint standby counsel under the circumstances of this case. Writing for the Supreme Court in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), Justice Sutherland observed "attorneys are officers of the court, and are bound to render service when required by such an appointment." *Id.* at 73, 53 S.Ct. at 65. The Court has also stated "[e]very court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness." *Betts v. Brady,* 316 U.S. 455, 471–72, 62 S.Ct. 1252, 1261, 86 L.Ed. 1595 (1942). In affirming a district court's power to compel an unwilling lawyer to provide representation at trial, we stated that the power exists because

> [t]he court's responsibility for the administration of justice would be frustrated were it unable to enlist or require the services of those who have, by virtue of their license, a monopoly on the provision of such services. Attorneys who have the privilege of practicing before the court have a correlative

obligation to be available to serve the court.

*Accetturo,* 842 F.2d at 1413.

Power inherent in the function of the judiciary exists so that a court may manage its affairs " 'to achieve the orderly and expeditious disposition of cases.' " *Chambers v. NASCO, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)). Such power can be invoked by a court to manage its docket as well as regulate the conduct of its bar. *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 561 (3d Cir.1985) (in banc); *see also Chambers,* —— U.S. at ——, 111 S.Ct. at 2132 (inherent power as tool for attorney discipline); *Gillette Foods Inc. v. Bayernwald–Fruchteverwertung, GmbH,* 977 F.2d 809, 813 (3d Cir.1992) (same).

The Supreme Court has held that 28 U.S.C.A. § 1915(d) (West 1966) does not authorize a district court to appoint an unwilling attorney to prosecute a civil rights claim for an indigent defendant. *See Mallard,* 490 U.S. at 310, 109 S.Ct. at 1822–23. In *Mallard,* however, the Court specifically reserved judgment as to whether a court could do so under its inherent power. *Id.*

Thus, while *Mallard* is instructive, it is not controlling on the existence of an inherent power to compel service as standby counsel in a criminal case by an attorney who has already entered an appearance. Subsequent to *Mallard,* the United States District Court for the Western District of Arkansas undertook a comprehensive review of the law concerning the inherent power of a court to appoint unwilling, uncompensated appointed counsel to serve an indigent in a civil matter and decided that a district court has no such inherent power. *Colbert v. Rickmon,* 747 F.Supp. 518, 527 (W.D.Ark.1990) (mem.). Neither *Mallard* nor *Colbert* considered the power of a district court to appoint free standby counsel for non-indigent criminal defendants. We recognize that the absence of standby counsel would not deprive Bertoli of his Sixth Amendment right to an attorney because he has knowingly and freely chosen to exercise his other undisputed Sixth Amendment right to proceed *pro se*. Still,

we are not persuaded by the court's reasoning in *Colbert* that a district court has no power to require standby counsel for the purpose of advancing its own interest in the fair, speedy and efficient disposition of cases on its criminal docket.

The Supreme Court noted the benefits of standby counsel in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), stating that an appointment may be made "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834 n. 46, 95 S.Ct. at 2541 n. 46. Such an appointment facilitates the accused's Sixth Amendment right to proceed *pro se* and conduct one's own defense. *Id.* at 821, 95 S.Ct. at 2534. The appointment of standby counsel may be made even over the objection of the defendant "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984).

We have stated the "appointment of standby counsel is the prudent course to take when a defendant elects to proceed *pro se*." *United States v. Welty*, 674 F.2d 185, 193 n. 5 (3d Cir.1982). In *Welty* we stated "[s]tandby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants." *Id.* (quoting ABA Standards of Criminal Justice, The Trial Judge's Function, Standard 6–3.7 (2d ed. 1980)). While we declined to adopt Standard 6–3.7 as a rule of law, we clearly expressed a preference for standby assistance to *pro se* litigants. *Id.* In *Accetturo* we held the United States District Court for the District of New Jersey could compel a member of its bar to serve without the attorney's consent. *Accetturo*, 842 F.2d at 1415.[10] We believe that decision implies the existence of the inherent power at issue in this case.

We believe it follows from *Accetturo* that an attorney who has entered an appearance for a criminal defendant has a duty to continue in a standby role not only to his former client but also to the court itself. Otherwise, in *Accetturo* we could have directed the district court to continue Accetturo's trial while he sought new counsel and new counsel became familiar with the case. Thus, the court's power to compel an attorney to continue through the trial once he or she has entered an appearance in a criminal case appears to be based not only on fairness to the defendant, but also on a court's inherent power to compel an attorney to continue to provide services at trial in order to further the efficient processing and disposition of its caseload.

There are, however, differences between this case and *Accetturo*. *Accetturo* involved the power of a district court to direct an attorney who had entered an appearance only as local counsel (and so expected to participate only in a limited way in a lengthy trial) to step in and act as lead counsel when lead counsel became critically ill. *Id.* at 1413. Under those circumstances, though we held the district court properly exercised its inherent power to appoint counsel for a criminal defendant, we cautioned district judges, as our fellows in the administration of justice, that such actions should be undertaken with "exquisite restraint and only under the most exceptional circumstances." *Id.* at 1415.

Unlike the attorney in *Accetturo*, who had expected to furnish only limited services, Podvey, Sachs has been fully involved with Bertoli's case from its inception as his sole legal counsel. Absent Bertoli's decision to go *pro se*, the firm was committed to representing him at trial. Though Bertoli's decision to

---

10. We note that in *Accetturo* we refused to compel a member of the Florida bar to step into the case despite his "first-rate criminal defense skills," familiarity with the case and ability to act as a liaison to the ill trial attorney. Thus, while factors such as proficiency and relation to the case appear to be insufficient to invoke the court's inherent power by themselves, a factor such as membership in the bar of the court coupled with an entry of appearance is sufficient to invoke the court's inherent power to oblige an attorney to render services he has not agreed to. *See id.*

proceed *pro se* would appear to make the firm's continuing services less important than in *Accetturo*, we think the court's inherent power may be used to require counsel who has entered a general appearance to serve in a standby capacity; therefore, we hold that the district court has a limited power to order the firm to continue to advise Bertoli in a standby role.

### 2.

In a more particular vein, Podvey, Sachs also contends "an appointment [of standby counsel] is unwarranted in this case." Brief for Appellants at 21 (footnote omitted). The firm contends Bertoli is an experienced litigant with enough knowledge of the judicial system to conduct his own defense without any aid from the firm. In approving Bertoli's request for *pro se* status, the district court engaged in a lengthy and penetrating discourse on Bertoli's motivations and ability to represent himself. *See* App. at 165–219. Bertoli's answers satisfied the district court that his waiver of counsel was knowing and voluntary and that he was competent to handle his own defense. This determination does not, however, lead inexorably to the conclusion that standby counsel is not needed.

Though Bertoli may be an experienced litigant, this case is complex. By the estimate of all parties, the trial will be long and the statutes and legal concepts involved are technical. On January 27, 1992, at the start of Bertoli's arraignment on the second superseding indictment, he requested a one week continuance so he could decide whether he needed an attorney in light of the length and complexity of the new allegations against him. Considering the possibilities of delay and confusion that are inherent in a *pro se* trial, we do not think a *pro se* litigant's basic competence to conduct his own defense negates every benefit standby representation offers to the court or the other litigants. Under the circumstances of this case we hold that the district court did not clearly abuse its discretion when it ordered standby counsel for Bertoli.

Having held the district court has limited discretion to require service as standby coun-

sel and that it did not abuse its discretion in determining that such counsel was appropriate in this case, we repeat the caution stated in *Accetturo* that the court should exercise that power with "exquisite restraint and only under the most exceptional circumstances." *Id.* In doing so we think the district court should consider all the circumstances, including but not limited to: (1) the stage of the proceeding at which the defendant elects to go *pro se*, whether it be before, during or after trial; (2) the complexity of the case; (3) the impact a disruptive or inadequately informed litigant might have on the rights of himself and his co-defendants to a fair and speedy trial; and (4) the extent to which performance of the services required will adversely impact the attorney called upon to perform them, whether personally or upon the attorney's firm or other clients. Although lawyers practice a profession, not just a trade, and because the bar's monopoly over legal services entails obligations to court and society, a court should always sensitively consider the effect that a too heavy-handed imposition of burdens may have on individual lawyers, their firm and other clients. While the bar has a responsibility to the court that goes beyond its own private interests, the court also has a responsibility to the lawyers who serve it. We take this occasion to remind the court of that responsibility in its continuing conduct of this case. The presence of a limited power to require counsel who has entered an appearance in a criminal case to continue to provide standby services to a former client who has elected to proceed *pro se* does not decide all the issues in this case.

### B.

Accordingly, we turn to the firm's contention that the district court clearly abused its discretion in selecting Podvey, Sachs to serve as standby counsel. We have already recognized the value of standby representation to both the litigant and the court. *See, e.g., McKaskle*, 465 U.S. at 184, 104 S.Ct. at 954; *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. Essentially, standby counsel has two purposes—to act as a safety net to insure that the litigant receives a fair

hearing of his claims and to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case. Alternately, we can identify at least four functions that standby counsel can serve:

(1) Standby counsel must be available if and when the accused requests help. *See Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46.

(2) Standby counsel must be ready to step in if the accused wishes to terminate his own representation. *See id.*

(3) The court may appoint standby counsel in order to explain and enforce the basic rules of courtroom protocol to the accused. *See McKaskle,* 465 U.S. at 184, 104 S.Ct. at 954; *United States v. Campbell,* 874 F.2d 838, 849 (1st Cir.1989).

(4) The court may appoint standby counsel in order to overcome routine obstacles that may hinder effective *pro se* representation. *See McKaskle,* 465 U.S. at 184, 104 S.Ct. at 954; *Campbell,* 874 F.2d at 849.

■ Podvey, Sachs' argument would be stronger if its attorneys had not entered an appearance as counsel of record for Bertoli. The firm has been deeply involved in the case almost from its beginning and again would be able to take over as counsel if Bertoli changes his mind and elects against continuing, or becomes unable to continue, *pro se.* The size of the firm permits it to make someone available when necessary. Finally, there is no doubt that the attorneys at Podvey, Sachs are competent trial lawyers and that their presence would aid Bertoli in explaining and enforcing court protocol and thus help him to overcome routine procedural obstacles.

Moreover, Local Rule 18 of the United States District Court for the District of New Jersey states:

Unless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court. After a case has been first set for trial, substitution and withdrawal shall not be permitted except by leave of Court.

D.N.J. R. 18 (1992). Local Rule 18's limitation on an attorney's right to withdraw put Podvey, Sachs on notice that the court asserted a power to compel it to continue over the client's objection and his inability or unwillingness to pay for continuing services. Though Rule 18 does not speak clearly as to whether Bertoli's decision to proceed *pro se* effected a substitution of counsel within the meaning of the rule, it does expressly vest the district court with discretion over counsel's decision to withdraw. District courts commonly exercise discretion over such matters. *See, e.g., United States v. Vastola,* 899 F.2d 211, 237 (3d Cir.), *vacated on other grounds,* 497 U.S. 1001, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990); *Campbell,* 874 F.2d at 849. It hearkens back to what was once a common understanding among attorneys experienced in providing private counsel to criminal defendants; namely, the need to obtain a retainer adequate to cover the continuing professional obligations the entry of an appearance in a criminal case entailed.

For these reasons and upon consideration of the four functions of standby counsel previously mentioned, we conclude the court's choice of Podvey, Sachs as standby counsel was not a clear abuse of discretion.

### C.

■ We turn next to whether the district court clearly abused its discretion in accepting the firm's offer to provide limited standby services, but additionally requiring the presence of a Podvey, Sachs attorney at all pretrial hearings and depositions and the presence of either Sachs or Chattman at all times during the lengthy upcoming trial. In reviewing these aspects of the district court's order, we look back to the functions we have articulated for appointment of standby counsel.

### *Availability to the Accused*

Under the terms of its offer, Podvey, Sachs agreed to make an attorney available to Bertoli for consultation at any time, whether in person or by telephone. This aspect of the firm's offer appears reasonable outside the context of the trial itself. Bertoli is an experienced litigant who chose to proceed *pro se* after extensive questioning by the trial court. The firm has made its li-

brary as well as its attorneys available for consultation with its former client. Moreover, the firm has offered to provide counsel for brief appearances as they are needed during the course of pretrial proceedings.

### Ability of Standby Counsel to Assume the Defense

Podvey, Sachs has been Bertoli's counsel since the filing of the indictment and is well versed in his case. Although a switch to counsel might not be instantaneous under the terms of the firm's offer, it could certainly be accomplished quickly and without great delay. Were Bertoli to make a decision in the future to retain counsel, Podvey, Sachs would at once be aware that full services would be required and could quickly prepare for them. The firm's offer appears to meet the district court's needs in this respect.

### Explanation and Enforcement of the Basic Rules of Courtroom Protocol

Podvey, Sachs' offer, however, can reasonably be thought inadequate to deal with the district court's concern that this case is too complex for Bertoli to handle without standby counsel. Folk wisdom is not always without foundation and there is truth in the old adage "a lawyer who represents himself has a fool for a client." A person not familiar with the principles of a legal system that has as its ideal the delivery of justice may have little sympathy for a person who suffers the consequences of his own folly, but American judges trained in the common law are not permitted coldly to turn their back on the *pro se* litigant. If, during much of the trial, Bertoli is left to his own devices, the court will have the burden of securing for him at least a modicum of protection against the consequences of his decision to proceed on his own. As the Supreme Court recognized in *McKaskle*, one reason for the appointment of standby counsel is to avoid any need for the trial court to take over the chores trained counsel might otherwise perform. *See McKaskle*, 465 U.S. at 184, 104 S.Ct. at 954. Unless an attorney is physically present at trial, this function will not be served. *See id.* Because the court has made the decision that this trial is too complex for Bertoli to effi-

ciently handle on his own, Podvey, Sachs' offer is inadequate in this respect.

### Assistance to the Defendant in Overcoming Routine Obstacles

For similar reasons, standby counsel's absence from the courtroom during trial sharply reduces the chances that this function of standby representation will be served. The flow of any trial continuously calls for quick decisions on evidentiary and procedural matters. A court cannot call a recess every time an immediate response to the dynamics of trial is needed.

We conclude, therefore, that the district court would not have abused its discretion had it added to the firm's offer of standby representation a requirement that some competent attorney be present in court during the trial. Nevertheless, the scope of the order it entered clearly exceed what is necessary to meet the essential needs of the court and the litigants in this case.

We recognize that when an attorney enters an appearance, it is at least traditional to treat it as his individual assumption of responsibility. The growth of firms, the economic imperatives of group practice and the current volume of litigation may have eroded that tradition and made us all, courts and lawyers, forgetful of the notion of individual responsibility that lies at the root of the old tradition. This old notion of individual accountability may in part explain the court's insistence on Sachs' presence. But, though Franklin Sachs entered his appearance for the firm, that does not, however, imply a total inability to delegate particular tasks to others, at least so long as the client does not object, a qualification not material in this case where the erstwhile client has elected to go *pro se* and counsel continues only in a limited standby role.

An ability to delegate responsibility can often serve the interest of court, counsel and litigant. It provides flexibility and permits more than one case in which a busy practitioner has entered an appearance to proceed at the same time. No hard and fast rule is likely to work well. It seems to us that the current practices of the profession as well as a court's interest in the fair and efficient

administration of justice demand some degree of flexibility informed by a mutual sense of responsibility with respect to delegation.

A *fortiori*, we think it is unreasonable to refuse to allow an attorney to delegate the limited duties a court can properly impose on standby counsel to other lawyers in his firm after a former client, who is not indigent, has elected to proceed *pro se*. The absence of any reasonable basis for the court's order precluding Sachs or Chattman from delegating the responsibilities of standby counsel at trial is shown, at least with respect to Sachs, by the observation Judge Garth made about the record when he granted a stay of the district court's order directing Sachs to appear in person at the July 3, 1992 hearing:

> It was represented by counsel for Bertoli that one H. Richard Chattman, a partner of Franklin Sachs, was knowledgeable about the case and the proceeding, and was available to appear on July 3, 1991. Significantly, a check of the district court's docket reveals that the appearance filed on behalf of the defendant, Bertoli, was in the name of Franklin Sachs, but it was represented to me that at all times papers in the proceedings have been filed by the predecessor to the present firm of Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello and that different attorneys of that firm have appeared in connection with various sections.

App. at 163.

Simply put, the district court's order goes too far. It forces Podvey, Sachs to have one of two named partners familiar with the case in court throughout the entire trial. This is not necessary. The presence of standby counsel during trial is a means of assuring that a *pro se* litigant has the knowledge required to observe the basic rules of courtroom protocol and is available to provide the assistance necessary to help a non-lawyer over the many obstacles he will encounter in presenting his own case. Indeed, imposition of more extensive responsibilities upon

standby counsel could interfere with a criminal defendant's right to represent himself. *See Faretta*, 422 U.S. at 813–36, 95 S.Ct. at 2530–41.

Accordingly, we cannot see why it is necessary to require the presence of a specific partner throughout the trial for the purpose of schooling Bertoli in the basics of courtroom protocol. It is enough if the district court requires the presence of an attorney who has the basic competence needed to advise Bertoli about the fundamentals of trial proceedings; and in this respect we think the court should assume, in the absence of evidence to the contrary (which we do not detect on this record) that the lawyers who manage Podvey, Sachs' affairs will have a sense of professional responsibility and will act reasonably in deciding whom to send. In short, we think Podvey, Sachs is entitled to be treated by the court as its partners in the administration of justice and we see nothing in this record that would permit the court to decide that Ms. Tolomeo, for one, could not adequately serve as standby counsel during Bertoli's trial.[11]

### D.

■ We also think the district court has clearly gone too far in at least one other respect. On March 17, 1993 it ordered the parties to proceed with a second set of depositions in the Cayman Islands so the case could go to trial in May. Under the terms of the still outstanding February 11, 1992 order, Podvey, Sachs was required to arrange for the attendance of one of its attorneys to act as standby. At the previous set of Cayman Islands depositions, the firm incurred expenses in excess of $13,000 which have never been reimbursed. The firm has advised us that Bertoli will be represented by local counsel in the Cayman Islands proceeding thus lessening the possibility of disruption and inconvenience to the court and prejudice to him. The argument that standby counsel

---

11. At the September 3, 1991 hearing Ms. Tolomeo suggested to the court that she would be a competent choice for standby counsel. The district court summarily rejected her claim. We are puzzled. She has represented Bertoli throughout the proceedings and it appears from the record that she could competently fulfill all the functions of standby counsel. We are also unable to understand why the court would insist on either Sachs or Chattman when the record reflects that neither has been involved with this case since July of 1991.

is needed to furnish instant advice as the dynamics of a trial shift back and forth is seen at once to be less acute at pretrial depositions. The court itself is not directly involved in any problems that occur in the course of depositions as a result of a *pro se* litigant's lack of professional training and Bertoli, like any informed *pro se* litigant, has already agreed to bear the consequences of his own inadequacies. Finally, the burden on the firm increases when it is compelled to supply an attorney, at its own cost, in a deposition outside the country. For these reasons, we stayed the district court's order to the extent it required a Podvey, Sachs attorney to attend the depositions. On further consideration of that part of the order, we see no reasonable basis for the specific requirement of the court's original order of February 11, 1992, repeated in its order of March 3, 1993, that the firm provide standby counsel during the taking of depositions in the Cayman Islands. Local counsel will be adequate to deal with any problem that may occur there as a result of Bertoli's *pro se* status, and he himself has already knowingly and voluntarily agreed to assume the risk of his own mistakes. Therefore, we will expressly prohibit the district court from requiring Podvey, Sachs to send an attorney to the Cayman Islands to attend the forthcoming depositions in that jurisdiction as Bertoli's standby counsel.

### E.

The firm's arguments concerning denial of compensation are yet to be considered. In denying its motion for compensation the district court stated:

[I]t appears Bertoli is not an indigent defendant. Moreover, the representation here commenced by mutual agreement of Bertoli and Podvey Sachs, not by order or appointment of this court. To this end, Podvey Sachs voluntarily agreed and undertook representation of Bertoli. Podvey Sachs has an obligation to see this responsibility to conclusion. It does not have the right to drop out as it wishes. Podvey Sachs has significant obligations to its client and to the court. These voluntarily undertaken obligations should not [be] and are not dependent upon money.

*Cannistraro,* 799 F.Supp. at 422–23. The firm complains, in somewhat conclusory terms, that this part of the order denying compensation is a violation of the Due Process, Takings and Equal Protection Clauses of the Fifth Amendment as well as the Thirteenth Amendment's prohibition against involuntary servitude. We review each of these claims separately.

"[T]he phrase 'involuntary servitude' was intended 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *United States v. Kozminski,* 487 U.S. 931, 942, 108 S.Ct. 2751, 2759, 101 L.Ed.2d 788 (1988) (quoting *Butler v. Perry,* 240 U.S. 328, 332, 36 S.Ct. 258, 259, 60 L.Ed. 672 (1916)). We have recently said that we will "tak[e] a contextual approach to involuntary servitude by confining the Thirteenth Amendment to those situations that are truly 'akin to African slavery.'" *Steirer v. Bethlehem Area School Dist.,* 987 F.2d 989 (3d Cir.1993). A requirement that an attorney perform uncompensated service after entering an appearance in a criminal matter does not evoke in our minds the burdens endured by the African slaves in the cotton fields or kitchens of the antebellum south.

To establish an equal protection violation, Podvey, Sachs would have to show there is no rational basis for imposing on lawyers, as a class, a burden to provide free standby services to non-indigents who have elected to proceed *pro se.* Case law indicates that may be difficult because the burden here is one incident to the regulation of a profession and the members of that profession are not a suspect class. *See, e.g., City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (per curiam); *Schumacher v. Nix,* 965 F.2d 1262, 1266 (3d Cir.1992) ("As a general matter, economic ... legislation is subject to rational basis review, under which a law need only be 'rationally related to a legitimate state interest.'" (citing *Dukes,* 427 U.S. at 303, 96 S.Ct. at 2516–17)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1252, 122 L.Ed.2d 651 (1993); *Price v. Cohen,* 715 F.2d 87, 92 (3d

Cir.1983) ("[R]egulations that have differing impacts on various types of commercial entities, for example, a city ordinance controlling advertising on delivery vehicles, violate the equal protection clause only if they are not rationally related to a legitimate state interest."), *cert. denied,* 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 700 (1984); *see also Railway Express Agency v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). A *fortiori,* we think a power to require lawyers who have entered an appearance in a criminal case to provide standby services to a former client who, though not indigent, decides to continue *pro se* does not violate the right to equal protection of the lawyer or firm who has entered an appearance for him.

■ Beyond stating its presence, neither the firm nor the government addresses the due process argument in their briefs. To a large extent their contentions seem to involve substantive due process. In this respect, the appropriation of an attorney's "time and advice," the lawyer's classic "stock in trade," which occurs when an attorney who has entered his appearance in a criminal case is required to render standby services to a non indigent former client who has elected to proceed *pro se,* is not an arbitrary and capricious government action that has no rational relation to legitimate governmental interests. This record does not show that the order as we have modified it places a crushing burden on the firm. Moreover, our opinion requires district courts, in exercising their discretion to require such services, to balance appropriately their own interests in the expeditious administration of their criminal dockets with the needs of the defendant, his or her co-defendants and the burden on the attorney or firm involved.

■ The firm's strongest argument is predicated on the Takings Clause. It is, we think, related to the due process argument. In considering arguments that lawyers cannot be compelled to provide uncompensated services for indigents without violating the Takings Clause, courts have taken two alternate approaches. We think similar alternatives are present in considering whether attorneys who have entered an appearance in a criminal case can be required to provide uncompensated standby services to persons who are not indigent.[12] Thus, Podvey, Sachs' takings argument may be approached in two ways. One approach looks at the uncompensated appropriation of an attorney's services as an interference with property that is too minor to require compensation. *See generally* Jerry L. Anderson, *Court–Appointed Counsel: The Constitutionality of Uncompensated Conscription,* 3 Geo.J. Legal Ethics 503 (1990) ("Anderson"). This approach relies on the police or regulatory power. The second approach views the requirement of providing reasonable uncompensated services as an implied condition of an attorney's license to practice law. *Id.* We recognized the latter approach in *Accetturo* but declined to decide the issue now presented. *Accetturo,* 842 F.2d at 1413. With either approach, we think the extent of the burden must be balanced against the court's need and the rights of the *pro se* defendant.

At least two commentators recognize that all of these constitutional arguments are affected by the extent of an attorney's professional "duty" to provide free services to indigents as a condition to the privilege of practicing law. *Compare* Anderson, *supra* at 528–31 to David L. Shapiro, *The Enigma of the Lawyer's Duty to Serve,* 55 N.Y.U.L.Rev. 735, 767 (1980). However, the scholarly analysis and cases our research has uncovered deal primarily with the question of the duty of lawyers, as a class, to provide uncompensated services to indigents. The considerations relevant to that issue are profoundly different from those we face. This case does not involve lawyers as a class. It involves a particular law firm that has undertaken the representation of a particular non-indigent client in a particular criminal case by entering a formal appearance for him. That fact affects all of the firm's constitutional argu-

---

12. We recognize, of course, that the case for requiring uncompensated services for persons who can pay is weaker inasmuch as it rests primarily on the needs of the court in its exercise of the sovereign judicial power with heavy ancillary support from the right of a criminal defendant to an attorney.

ments and makes this case truly one of first impression.

As we have already twice noted, there is nothing in this record to indicate that the firm's provision of some standby services to Bertoli without an assurance of compensation would be such a crushing burden that its very existence would be threatened. Indeed, the firm has offered and continues to offer many of the services the order in question requires without compensation on a pro bono basis. Thus, the absence of any assurance of compensation does not now threaten the firm with irreparable harm, an important factor in the decision to issue mandamus. Because the extent to which the time of Podvey, Sachs' attorneys will be taken is unknown and the order after modification as required by this opinion will avoid a final decision concerning whether Bertoli will be ordered to compensate Podvey, Sachs, we need not reach at this time the question whether the district court's order, as modified, constitutes a taking without just compensation. *See Suburban Trails, Inc. v. New Jersey Transit Corp.*, 800 F.2d 361 (3d Cir.1986) (before final agency decision concerning denial of subsidies, constitutional issue whether property was taken without just compensation is not ripe for judicial review).

Because we conclude that it is premature for us to decide whether Podvey, Sachs has shown a violation of any constitutional rights on the record now before us, the firm may raise these or any other arguments in favor of its right to compensation at a later point in this proceeding, whether on appeal from an order of contempt, a motion after the conclusion of the criminal case or in a separate civil proceeding. On this record, we do not think it is necessary or desirable to determine how the firm may assert whatever right it may have against the government or against Bertoli himself. The problem under the Takings Clause lies in the misty region between the limits of the police power and the power of eminent domain. We are unwilling to venture into that contested land armed only with the limited power of mandamus without giving the district court an initial opportunity to apply our balancing test to its order after it has been modified in accord with this opinion.[13]

In addition, the Sixth Amendment right of a criminal defendant to proceed *pro se* requires Bertoli's interests to be factored in.[14] If a final decision on the question of the firm's right to compensation becomes necessary, we think it would be better made after Bertoli, Podvey, Sachs and the government have all had an opportunity to present their

---

**13.** We frankly recognize there can be problems concerning the availability of any remedies that have come to our mind, other than an appeal from a final order of contempt. A civil action for just compensation may flounder in the absence of appropriation. *See* Const. Art. I, § 9 cl. 7. An action in restitution against Bertoli may present difficulties as well. We are unaware of any rule of criminal procedure or statutory authority for a fee petition ancillary to a criminal proceeding after final judgment, nor any other express authority that would permit a sentencing court to impose on Bertoli an obligation to pay his standby counsel even if that is not otherwise precluded by *Faretta*. An analogy to the costs that are usually imposed on losing parties may be possible especially because it would not appear to impose any undue hardship on Bertoli, but the power to impose costs is generally statutory and expressed in quite specific terms.

**14.** "The right to assignment of counsel is not limited to those financially unable to obtain counsel. If a defendant is able to compensate counsel but still cannot obtain counsel, he is entitled to the assignment of counsel even though

not to free counsel." Fed.R.Crim.P. 44(a) advisory committee's note. The government contends that the compensation issue can be decided without Bertoli's input. It cites two cases, *United States v. Krall*, 835 F.2d 711 (8th Cir.1987) and *United States v. Pattan*, 931 F.2d 1035 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2308, 119 L.Ed.2d 229 (1992) for the proposition that a litigant can be compelled to bear the costs of standby counsel. *Krall* merely noted in its recitation of the procedural history of the case that the defendant's sentence included an order to compensate standby counsel. *Krall*, 835 F.2d at 713. The defendant did not challenge this portion of the sentence and the court did not address the propriety of the sentence in light of Sixth Amendment concerns. See *id. Pattan* involved an order appointing counsel for a nonindigent defendant. *Pattan*, 931 F.2d at 1040–41. The right to self-representation was not implicated in that case. We do not find these cases persuasive. Bertoli's rights as a *pro se* defendant would be at issue were we to consider on the merits whether the district court could compel him to compensate standby counsel appointed for the court's convenience against his wishes.

respective positions on a full and complete record that shows the effect of the order, as we have directed it to be modified, on all parties.

Accordingly, we think that the district court's order, to the extent that it purports finally to determine the total absence of a right to compensation for the services ordered, is prematurely rendered. We will direct it to either vacate that part of its order or modify it to provide expressly that it is entered without prejudice to the right of the firm to seek a determination of its right to compensation for any standby services it is required to perform beyond those freely offered.

We repeat, however, that our holding that the district court can compel the limited additional services we have specified is peculiar to the circumstances of this case. In addition to a court's interest in the efficient processing of criminal case, the presence of standby counsel serves the important interest a *pro se* defendant has in a fair opportunity to present his defense without undue interference with his right to proceed *pro se* under *Faretta*. Accordingly, our holding today that a district court has an inherent power to require an attorney who has entered an appearance for a non-indigent to continue to provide services without compensation is limited to criminal cases. We express no opinion on the existence of any such duty in a civil case.

### IV.

Perhaps understandably, the record in this case hints at some animus between the court and Bertoli and Bertoli's counsel. Bertoli has sought recusal on several occasions. He has called into question the district judge's ability to adjudicate fairly his pretrial motions. Some of the exchanges at the hearings the district court has already held indicate that this case has been contentious. For example, at the September 3, 1991 hearing during the discussion of Podvey, Sachs' continued representation in light of Bertoli's *pro se* status, the following exchange occurred after the court indicated it would require either Sachs or Chattman to be present during trial:

MS. TOLOMEO: Your Honor, it would appear to me that your directions are purely punitive.

THE COURT: That's silly and I find objection to that. There is no basis to suggest that.

MS. TOLOMEO: Your Honor, have you—

THE COURT: If you want to go to the Circuit on it, file an interlocutory appeal.

MS. TOLOMEO: I certainly will do so.

THE COURT: If the Circuit wants to relief [sic] you, that's fine with me. I'm here to take orders from the Circuit. If they feel that it's not necessary, that's fine.

. . . . .

But I am basing my decision on the fact that this gentleman should have the opportunity and access to counsel if he changes his mind. You folks have been intimately involved.... You got into the case willingly, you were not appointed.

MS. TOLOMEO: Your Honor, you're asking us to undertake a trial that could take several months without pay.

THE COURT: I'm not asking, I'm directing.

MS. TOLOMEO: I know that.

. . . . .

THE COURT: Let me clarify one thing. I'm directing that you continue. You voluntarily—when I say "you," Podvey, Sachs voluntarily took the representation of Mr. Bertoli. Mr. Sachs, now, it appears Mr. Chapman [sic] were the trial attorneys in this case voluntarily, vigorously and at times questionably argued and engaged in procedures on behalf of Mr. Bertoli.

Now, the point of the fact is I'm not going to relief [sic] Podvey, Sachs of the responsibilities. I have agreed to mitigate that, to allow you, Miss Tolomeo, to go to the Cayman Islands or to appear at these pretrial conferences. I will not mitigate that with regard to trial. I again state that Mr. Sachs or Mr. Chapman [sic] will be here.

Now if the Circuit wants to reverse me, that's fine.

. . . . .

MS. TOLOMEO: [W]hat is the basis for requiring Mr. Chapman [sic] or Mr. Sachs to appear at trial? If I'm capable of handling pretrial, I'm just as capable or anybody else in the firm, is just as capable of handling the trial.

THE COURT: Because Mr. Sachs represented that either he or Mr. Chapman, [sic] when he went to the Circuit this summer, could handle the matter. That was the representation. That's the basis for it and that's how it's going to go.

If you want to go to the Circuit, be my guest. File an interlocutory appeal. I'm not going to certify this issue.

MS. TOLOMEO: Your Honor, you're incorrect as to the representation to the Circuit.

THE COURT: Fine.

MS. TOLOMEO: The Circuit held the firm represented Mr. Bertoli. The only representation was that Mr. Chapman [sic] could represent Mr. Bertoli at that hearing, it had nothing to do with the trial.

THE COURT: I disagree with you on that. If the Circuit agrees with you, fine. Maybe they'll agree with you on everything and if that is what happens, fine. ... Because you decided that you don't want to do it any more, for whatever reasons, I'm not going to let you out. If I'm wrong, the Circuit will let you out.

MS. TOLOMEO: We didn't decide it, the client did.

THE COURT: That's fine.

App. at 256–60. At the same hearing the court questioned Tolomeo sharply on her failure to include an affidavit with the firm's motion to withdraw based on Bertoli's desire to proceed *pro se.* When Tolomeo informed the court that there was no reason the firm desired to withdraw other than Bertoli's decision to proceed *pro se,* the court said:

THE COURT: So you're telling me that there is absolutely no basis for the request, other than his capricious desire to represent himself, correct?

MS. TOLOMEO: Your Honor, I wouldn't call it capricious.

THE COURT: What's the basis for it?

MS. TOLOMEO: I believe that he believes he can do a fine job himself, representing himself.

THE COURT: Why was that not set forth in an affidavit or in the so-called letter in support of the motion?

MS. TOLOMEO: Your Honor, if you would like me to submit an affidavit stating that he would like to do it, I'll be happy to.

THE COURT: I want you to respond to my question.

It seem to me that the filing of this motion, the lateness of the filing of this motion is more than just happenstance. These depositions have been scheduled for several months and the timing is not lost on me on the filing of this motion.

What about that, why so late in the filing of this motion? Is this just to delay, to otherwise occupy the Government?

MS. TOLOMEO: No.

THE COURT: When was this decision made?

MS. TOLOMEO: It was made—I believe it was discussed for several weeks before I called the Government to let them know. I believe Mr. Bertoli made the final decision a couple days before I called the Government. It was absolutely not with any desire to delay the proceedings.

App. at 169–70. We have already set out the letter exchange between the court and Sachs concerning the court's order requiring Sachs' presence at a July 3, 1991 hearing which culminated in an emergency request for a stay to this court. *See supra* at 1006–1007. It provides additional evidence of some degree of acrimony.

It is sometimes hard to remember that the relationship between bench and bar requires the mutual respect that permits a court to make fair and rational decisions only after it has been fully informed about the parties' contentions by the advocates who appear before it. We recognize the burdens a busy district court faces in conducting a complex criminal trial with a contentious *pro se* defendant and we are sensitive to its need to exert firm control over both pretrial and trial proceedings in order to insure a fair trial and a just result. Accordingly, both counsel and

 

the court should strive to avoid even the hint of rancor. We repeat what this Court has already said, "[t]here is a symbiotic relationship between the court and the attorneys who are members of its bar." *Accetturo*, 842 F.2d at 1413.

## V.

In sum, we will treat this case as if on mandamus. So treated, on the merits we hold that the district court has a limited inherent power to order counsel who has freely entered an appearance for a non-indigent criminal defendant to act as standby counsel after its former client has elected to proceed *pro se*. In doing so, however, the court should balance its needs against those of the attorneys and the defendant before determining the extent of the pretrial and trial services that standby counsel must perform. Specifically we believe the benefit that the litigant and court are likely to gain from the presence of counsel must be weighed against the burdens imposed on the lawyers appointed and the potential of the appointment for interference with the Sixth Amendment right of a criminal defendant to proceed *pro se*. Finally, we hold that the district court clearly abused its discretion in specifying that either Sachs or Chattman must attend the trial as Bertoli's standby counsel, or as counsel if Bertoli revokes his *pro se* status or is otherwise unable to proceed *pro se*, and in directing Podvey, Sachs to send a standby attorney to the Cayman Islands depositions. We will therefore issue a writ prohibiting the district court (a) from ordering Podvey, Sachs to have an attorney present at the depositions in the Cayman Islands, (b) from ordering Sachs or Chattman to be present at Bertoli's trial or during any particular pretrial proceeding and (c) direct it to modify its order to provide that it is entered without prejudice to the firm's right to seek compensation for any standby counsel services not encompassed in the terms of its continuing *pro bono* offer. The record will be remanded

to the district court for further proceedings consistent with this opinion.[15]

---

**15.** In light of this opinion, the stay orders that we have heretofore entered, referred to in foot-note 5, *supra*, are dissolved.